UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**COOK COUNTY, ILLINOIS**, an Illinois governmental entity; and **ILLINOIS COALITION FOR IMMIGRANT AND REFUGEE RIGHTS, INC.**,

**Plaintiffs,**

vs.

**CHAD F. WOLF,** in his official capacity as Acting Secretary of U.S. Department of Homeland Security; **U.S. DEPARTMENT OF HOMELAND SECURITY,** a federal agency;

**KENNETH T. CUCCINELLI II,** in his official capacity as Acting Director of U.S. Citizenship and Immigration Services; and **U.S. CITIZENSHIP AND IMMIGRATION SERVICES,** a federal agency,

**Defendants.**

Case No. 19-cv-6334

Judge Gary Feinerman

**MEMORANDUM IN SUPPORT OF PLAINTIFF ICIRR'S REQUEST FOR DISCOVERY ON ITS EQUAL PROTECTION CLAIM**

### I. Introduction

This case involves two separate and independent claims: an Administrative Procedure Act (APA) challenge to Defendants' Final Rule and a constitutional claim that Defendants' actions were motivated by a racially discriminatory purpose and therefore violate the Equal Protection Clause. Compl. ¶¶ 170-188.

1

ICIRR seeks discovery in support of its equal protection claim. And its position that discovery is necessary and appropriate is quite simple: ICIRR is entitled to non-administrative-record discovery relevant to its equal protection claim in compliance with Rule 26, just as it would be if it had brought that claim by itself. Rule 26 permits litigants to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (considering, among other factors, "the importance of the issues at stake . . . , the parties' relative access to relevant information . . . , the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"). That rule applies here regardless of the APA claim. Discovery beyond the administrative record may be highly probative with respect to ICIRR's claim that the Defendants acted with discriminatory animus in advancing the Final Rule in violation of the Equal Protection Clause, and there is no reason for discovery to be limited or delayed merely because ICIRR also has asserted an APA claim.

**II.       Discovery is necessary to identify evidence of discriminatory intent, the crux of the equal protection analysis.**

The application of Rule 26 is clear in the context of a discrimination claim, because, as courts have recognized, discovery is critical to the adjudication of such claims. In the seminal equal protection case of *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, the Supreme Court recognized that "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." 429 U.S. 252, 266 (1977). The Supreme Court set forth a non-exhaustive list of factors for courts to consider in performing the "sensitive inquiry" into discriminatory intent, including: (1) "[t]he historical background of the decision . . . particularly if it reveals a series of official actions taken for invidious purposes"; (2) "[t]he specific sequence

2

of events leading up to the challenged decision"; (3) "[d]epartures from the normal procedural sequence"; (4) "[s]ubstantive departures . . . , particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached"; and (5) "[t]he legislative or administrative history . . . especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." *Id.* at 267-68. These are merely some of the "subjects of proper inquiry in determining whether racially discriminatory intent existed," *id.* at 268, and a plaintiff seeking to prove discriminatory purpose or motive behind an agency's stated action is entitled to discovery on these subjects, among others.

   These subjects cannot be fully investigated by review of the administrative record alone. Because the strongest evidence of racial animus is often covert, a discovery "inquiry into unrecorded discussions and motivations is critical in civil rights cases attacking the integrity of a decision" or action. *United States v. Lake Cty. Bd. of Comm'rs*, 233 F.R.D. 523, 528-29 (N.D. Ind. 2005) ("[O]fficials acting in their official capacities seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority. . . . It is only in private conversation, with individuals assumed to share their bigotry, that open statements of discrimination are made, so it is rare that these statements can be captured for purposes of proving racial discrimination . . . ." (quoting *Smith v. Town of Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982))). For that reason, "decisionmakers' thoughts and unrecorded deliberations are appropriate forms of discoverable evidence in cases like this one," alleging racial discrimination by a governmental agency. *Id.* at 528; *see also Torres v. City Univ. of N.Y.*, No. 90 Civ. 2278, 1992 WL 380561, at *4 (S.D.N.Y. Dec. 3, 1992) (noting plaintiffs asserting a violation of a civil right are "entitled to probe for circumstantial evidence of intent"

through a "broad and liberal treatment" of discovery rules (citing *Herbert v. Lando*, 441 U.S. 153, 170-75 (1979))); *cf. McKee v. Rockwall*, 877 F.2d 409, 422 (5th Cir. 1989) (Goldberg, J., concurring in part and dissenting in part) ("As our society continues to change, purposefully discriminatory actions occur more frequently behind closed doors and within the recesses of the mind than in the open square of public discourse. But whether on the corner square or within the dark passageways of the mind, purposeful discrimination is still invidious."). Accordingly, the discovery available through the mere production of the administrative record—that is, evidence of overt rather than covert actions—being produced in response to the APA claim is insufficient under Rule 26 to address the equal protection claim.[1]

This need for discovery of evidence tending to show animus is particularly acute in this case, where the likelihood that discovery will expose additional evidence of discriminatory intent by the Defendants, including discriminatory influence by individuals within the White House, is all but certain. For example, both before and after the filing of this case, news reports surfaced about White House Senior Advisor Stephen Miller's aggressive push to pressure DHS officials to move faster to complete the Final Rule. Miller was accused of having a "singular obsession" with the rule,[2] constantly emailing DHS and USCIS officials that "[it] should be the first thought

---

[1] The importance of discovery to unearth animus has been invoked across a range of anti-discrimination statutes. *See Trevino v. Celanese Corp.*, 701 F.2d 397, 405 (5th Cir. 1983) (noting that the "imposition of unnecessary limitations on discovery is especially frowned upon in Title VII cases," as "'courts have refused to allow procedural technicalities to impede the full vindication of guaranteed rights'" (quoting *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 305 (5th Cir. 1973))); *cf. Mt. Holly Garden Citizens in Action Inc. v. Twp. of Mt. Holly*, 658 F.3d 375, 385 (3d Cir. 2011) ("The FHA is a broadly remedial statute designed to prevent and remedy invidious discrimination on the basis of race that facilitates its antidiscrimination agenda by encouraging a searching inquiry into the motives behind a contested policy to ensure that it is not improper." (citation omitted)).

[2] Ted Hesson, *Emails Show Stephen Miller Pressed Hard to Limit Green Cards,* Politico (Aug. 2 2019), https://www.politico.com/story/2019/08/02/stephen-miller-green-card-immigration-1630406.

you have when you wake up. And it should be the last thought you have before you go to bed. And sometimes you shouldn't go to bed."[3] In mid-November, the Southern Poverty Law Center published a summary of some 900 messages from Mr. Miller to an editor at Breitbart News, where Mr. Miller's messages repeatedly cited to materials from websites espousing white nationalist and anti-immigrant viewpoints, including the portrayal of non-white immigrants as violent or threatening.[4] Therefore, there are strong indicia that emails and communications since the time the idea to expand the definition of public charge was first considered—communications that are not included in the administrative record—will support ICIRR's equal protection claim. ICIRR is therefore entitled to discovery beyond the administrative record that is relevant to its equal protection clause claim.

### III. Discovery on Plaintiff's equal protection challenge squares with administrative law jurisprudence.

#### A. That ICIRR has also filed an APA claim does not foreclose its right to discovery in connection with its constitutional claim.

Although discovery in connection with most APA claims is limited to the administrative record, the fact that ICIRR and Cook County have also filed an APA claim in this case does not limit the discovery available to ICIRR in connection with its separate constitutional claim. When a constitutional claim is brought alongside an APA claim, courts consistently permit discovery on the constitutional claim if it arises from animus, and deny discovery only where the gravamen

---

[3] Eileen Sullivan & Michael D. Shear, *Trump Sees an Obstacle to Getting His Way on Immigration: His Own Officials,* N.Y. Times (Apr. 14, 2019), https://www.nytimes.com/2019/04/14/us/politics/trump-immigration-stephen-miller.html.
[4] Michael Edison Hayden, *Emails Confirm Miller's Twin Obsessions: Immigrants and Crime*, Southern Poverty Law Center (Nov. 25, 2019), https://www.splcenter.org/hatewatch/2019/11/25/emails-confirm-millers-twin-obsessions-immigrants-and-crime; *see also* Katie Rogers & Jason DeParle, *The White Nationalist Websites Cited by Stephen Miller*, N.Y. Times (Nov. 18, 2019), https://www.nytimes.com/2019/11/18/us/politics/stephen-miller-white-nationalism.html.

of the constitutional claim is that the agency's actions were arbitrary and capricious. *See Jiahao Kuang v. U.S. Dep't of Def.*, No. 18-CV-03698-JST, 2019 WL 293379, at *2-3 (N.D. Cal. Jan. 23, 2019) (denying discovery where plaintiffs did not allege discrimination based on a suspect classification, meaning constitutional analysis was "fundamentally similar" to arbitrary and capricious review); *Grill v. Quinn*, No. CIV S-10-0757 GEB, 2012 WL 174873, at *2 (E.D. Cal. Jan. 20, 2012) (finding "discovery as to the non-APA claim is permissible" because "[a] direct constitutional challenge is reviewed independent of the APA"); *P.R. Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urban Dev.*, 59 F. Supp. 2d 310, 328 (D.P.R. 1999) (authorizing discovery on constitutional claims brought alongside APA claims); *Rydeen v. Quigg*, 748 F. Supp. 900, 903-06 (D.D.C. 1990) (refusing to consider affidavits outside of the administrative record for APA claims but considering those affidavits in reviewing constitutional challenges), *aff'd*, 937 F.2d 623 (Fed. Cir. 1991).

One example of this principle is *Saget v. Trump*, a recent case challenging the Trump Administration's termination of Temporary Protective Status to Haitian immigrants as violative of the APA and the Equal Protection Clause. 375 F. Supp. 3d 280 (E.D.N.Y. 2019). The *Saget* court rejected the government's repeated attempt to limit its review under the *Arlington Heights* standard to the administrative record. *Id.* at 368. In doing so, the court found that to constrain review of equal protection claims to the administrative record "is inapposite to the Court's responsibility to 'smoke out' unconstitutional government conduct under the doctrine." *Id.* (quoting *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (1989)). The court further explained that limiting discovery to the administrative record would render it "impossible to conduct the full and thorough analysis . . . *Arlington Heights* demands." *Id.* The same is true

6

here: a full inquiry into the permissibility of the motives behind the Rule will require evidence beyond the administrative record itself.

Moreover, several courts have recently determined that discovery on an equal protection challenge is appropriate in similar cases. In *CASA de Maryland, Inc. v. Trump*, the court granted plaintiffs' proposed scheduling order, including fact discovery beyond production of the administrative record. No. 8:18-cv-00845-GJH (D. Md. Feb. 8, 2019), ECF No. 57, *attached hereto as* Exhibit A. This matter involves a challenge to the current administration's plans to terminate El Salvador's temporary protected status designation. The court denied a motion to dismiss in November 2018, allowing constitutional claims that the administration's plans were motivated by racial animus to move forward. *CASA de Md., Inc. v. Trump*, 355 F. Supp. 3d 307, 326-27 (D. Md. 2018).

Similarly, in *Mayor & City Council of Baltimore v. Trump*, the District of Maryland denied the government's motion to dismiss an equal protection challenge to recent amendments to the State Department's Foreign Affairs Manual. No. CV ELH-18-3636, 2019 WL 4598011 (D. Md. Sept. 20, 2019). The amendments to the Foreign Affairs Manual pertain to the determination of "public charge" for purposes of visa applications for those outside the United States seeking entry. In its ruling, the court noted that the case should be decided on the basis of a record developed through discovery. *Id*. at *39 (plaintiffs may or may not "unearth evidence during discovery demonstrating that defendants were driven by nothing more than 'a bare . . . desire to harm a politically unpopular group'" (citation omitted)). The scheduling order, ECF No. 69, Exhibit B, currently permits discovery outside the record, although the defendants requested on November 18, 2019 that the court modify its scheduling order to disallow discovery beyond production of the administrative record.

7

There is also support in this Circuit for fact discovery on constitutional claims beyond an existing administrative record in other contexts. For example, in the context of Title VII, the Seventh Circuit has acknowledged the limitations of administrative review, and noted that constitutional claims joined in such proceedings can be "explored in discovery." *Durgins v. City of East St. Louis*, 272 F.3d 841, 843 (7th Cir. 2001) (noting that plaintiff's First Amendment claim alleging that her employer fired her in retaliation for protected speech "could not have been resolved on the record before the Board" adjudicating her wrongful discharge claim, but could have been "joined with the administrative-review proceedings and explored in discovery"). Dismissing a concern that an administrative appeal would "subsume" a plaintiff's civil rights claims, the Seventh Circuit has explained that "Title VII and §§ 1981 and 1983 claims are original actions independent of the administrative review proceeding and are therefore plenary in scope." *Garcia v. Village of Mount Prospect*, 360 F.3d 630, 643-44 (7th Cir. 2004). And in *Rodriguez v. City of Chicago*, a former city employee alleged that Defendants subjected him to an unconstitutional drug test and used that test as a basis to terminate his employment with the City. 370 F. Supp. 3d 848, 851 (N.D. Ill. 2019). In evaluating the constitutionality of the drug test, the court explained that it "must examine all the evidence before it to determine whether Plaintiff's constitutional rights were violated, and not simply the administrative record [from the City of Chicago's Human Resources Board]." *Id.* at 856 n.3.

Although many of these cases address agencies' adjudicatory rather than rulemaking roles, the principle remains the same: constitutional claims are different from those explored in an administrative proceeding, and fairness to the parties requires that traditional discovery, within the proper bounds of Rule 26, move forward as to constitutional claims.

B.  **The rationale behind limiting APA claims to the administrative record does not hold for Equal Protection Clause constitutional challenges alleging racial animus.**

As a general proposition, "a court reviewing an agency decision under the APA is confined to the administrative record compiled by that agency." *Nat'l Audubon Soc'y v. Hoffman*, 132 F.3d 7, 14 (2d Cir. 1997) (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985)). The rationale for this "record rule" is that when reviewing a rule that an agency is authorized to promulgate, the court should have before it only those materials that were before the agency when it made its decision and should not substitute its own opinion for that of the agency. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971); *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *see also Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985) ("[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.").

The good reasons for generally cabining judicial review of an APA claim to an agency's administrative record dissipate with respect to a constitutional challenge, and specifically, an equal protection challenge involving race. The record rule stems from a deferential stance on agency action that is improper on this kind of constitutional challenge. *See Quigg*, 748 F. Supp. at 906 (holding that the court "need not accord deference to the agency's decision in regard to plaintiff's constitutional challenges because courts, not agencies, are experts on constitutional issues," and considering affidavits outside the administrative record). It is "emphatically the province" of the courts to interpret the Constitution, and the Supreme Court has warned that this judicial power must never be shared with the Executive Branch. *Marbury v. Madison*, 1 Cranch 137, 177 (1803); *cf. Miller v. Johnson*, 515 U.S. 900, 922 (1995); *Kisor v. Wilkie*, 139 S. Ct. 2400, 2437 (2019) (Gorsuch, J., concurring). Most importantly, courts are more than capable of

doing two things at once when multiple claims are brought—in this case, for example, considering only the administrative record on an APA claim but additional evidence on the equal protection claim. This may be particularly true here, where the Court will decide the APA claim, but where ICIRR has requested a jury hear the equal protection claim.

### C. Supreme Court precedent confirms equal protection constitutional challenges are different than statutory administrative challenges under the APA.

The Supreme Court's recent decision in *Department of Commerce v. New York* considered the role of the record in an APA challenge to an agency's decisionmaking as pretext. *See* 139 S. Ct. 2551, 2568 (2019). *Department of Commerce* is distinct from the instant case, as the Equal Protection Clause claim in the case had been dismissed by the lower court and was not at issue on appeal to the Supreme Court. Nevertheless, the Supreme Court approved of extra-record discovery *even within the APA context*. *Id.* at 2574 (holding that the district court was "ultimately justified" in ordering extra-record discovery).

Moreover, in evaluating the constitutional challenge that the Court *did* address in *Department of Commerce*, *i.e.*, the Enumeration Clause, the Court showed no indication of having been restricted to the administrative record. *See id.* at 2567. To the contrary, the Court noted that "history matters" on this claim, and recited facts about what Congress had sought, or permitted the Commerce Secretary to seek, in the decennial census dating back to 1790. *Id.* These historical facts were relevant to the plaintiffs' Enumeration Clause challenge. It is illogical that the plaintiffs would only have access to these relevant historical facts from the Defendants if they were judicially noticeable or if the Defendants included them in the administrative record. Just as "history matters" for the Enumeration Clause, "bias matters" for the Equal Protection Clause and thus discovery into bias and other inquiries relevant to the equal protection challenge, within the scope of Rule 26, must be permitted.

10

### IV. Discovery should proceed immediately.

Defendants present no just reason why discovery to uncover racial animus in this case should be stayed. Even with the Defendants' stated intention to file a motion to dismiss, it is within the court's discretion whether discovery should be stayed. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). There is "a strong public policy in favor of disclosure of relevant materials" and a case-by-case analysis is required before restricting discovery. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002).

In particular, there is no automatic right to stay discovery pending a motion or simply because a party requests a stay. *Niederhoffer Intermarket Fund, L.P. v. Chi. Mercantile Exchange*, No. 99 C 3223, 1999 WL 731773, at *1 (N.D. Ill. Aug. 31, 1999); *Builders Ass'n of Greater Chi. v. City of Chicago*, 170 F.R.D. 435, 437 (N.D. Ill. 1996). A stay of discovery may be appropriate when "the motion to dismiss can resolve the case, where ongoing discovery is unlikely to produce facts necessary to defeat the motion, or where the motion raises a potentially dispositive threshold issue, such as a challenge to plaintiff's standing." *Nexstar Broad., Inc. v. Granite Broad. Corp.*, No. 11-CV-249, 2011 WL 4345432, at *2 (N.D. Ind. Sept. 15, 2011). A court gives greater consideration to staying discovery where the matter involves particularly complex issues. *Id.* at *3.

A stay of discovery is not appropriate here. ICIRR has brought a straightforward claim that Defendants were motivated by racial animus when advancing the Public Charge Rule. Additionally, the Court has already recognized ICIRR has standing to challenge the Rule under the APA, Memo Op. and Order [Dkt. 86] at 9-10, and that same standing analysis undergirds ICIRR's standing to bring the Equal Protection Clause claim. *See Common Cause Ind. v. Lawson*, 937 F.3d 944, 954 (7th Cir. 2019); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379

(1982). As discussed above, courts also have rejected efforts to dismiss similar equal protection claims, finding that the administration's public anti-immigrant statements were more than sufficient to support a plausible inference of animus based on race and/or national origin/ethnicity against non-white immigrants in general and Haitians in particular. *Saget*, 375 F. Supp. 3d at 372. (This also means that any burden on the defendants to provide prompt discovery concerning the equal protection claims is minimal.)

Finally, ICIRR has not yet served its discovery requests; it does not intend to seek the full gamut of discovery available to it under Rule 26. Rather, it seeks the discovery of certain communications, as well as the taking of a limited set of depositions. There is no reason to stay all discovery without evaluating whether the requested discovery will be necessary to prove racial animus and therefore should be permitted. *See Stone v. Trump*, 400 F. Supp. 3d 317, 351 (D. Md. 2019) (denying request for stay of all discovery in case involving equal protection challenge to ban on transgender military service).

## CONCLUSION

ICIRR is entitled to discovery that is not restricted to the administrative record on its equal protection claim. By this claim ICIRR is not asking the court to review agency action for compliance with § 706(2)(A) of the APA. ICIRR instead seeks to establish a constitutional violation independent of the APA and thus, it must not be restricted to the record assembled under the APA.

Restricting an equal protection claim based on allegations of racial animus to a paper record, curated by Defendants under the APA, would allow agency decisionmakers the opportunity to launder animus through agency rulemaking. An equal protection claim is essentially a question of first impression for a trial court; the answer does not necessarily lie—

and in this case almost certainly will not be found entirely—in the agency's assembled administrative record. The court should permit the parties a full opportunity to litigate, and refer questions of racial animus to a jury so that they may weigh evidence, determine motive, and ultimately find facts.

The rights and liberties of immigrants are under threat from the Public Charge Rule and society has a substantial interest in accurate fact-finding on this issue. Given the centrality of the government's role here and unavailability of necessary evidence from sources other than government decisionmakers, it is especially important that ICIRR be able to get behind the closed doors of the administrative record that "those very decisionmakers may have carefully curated to exclude evidence of their true intent and purpose." *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 668 (S.D.N.Y.), *aff'd in part, rev'd in part and remanded sub nom.*, *Dep't of Commerce v. New York*, 139 S. Ct. 2551 (2019) (citations omitted).

For the aforementioned reasons, Plaintiff ICIRR respectfully requests that this court permit discovery on its equal protection claim, and for any other relief that is just and proper.

Dated: December 5, 2019

Respectfully submitted,

ILLINOIS COALITION FOR IMMIGRANT AND REFUGEE RIGHTS, INC.

By */s/   David A. Gordon_____*
    David A. Gordon
    Tacy F. Flint
    Marlow Svatek
    Sidley Austin LLP
    One South Dearborn Street
    Chicago, IL 60603
    (312) 853-7000 (Telephone)
    (312) 853-7036 (Facsimile)
    dgordon@sidley.com
    tflint@sidley.com

msvatek@sidley.com

Yvette Ostolaza (*pro hac vice pending*)
Texas Bar No. 00784703
Robert S. Velevis (*pro hac vice pending*)
Texas Bar No. 24047032
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, Texas 75201
(214) 981-3300 (Telephone)
(214) 981-3400 (Facsimile)
Yvette.ostolaza@sidley.com
rvelevis@sidley.com

By */s/*   Caroline Chapman_____
Caroline Chapman
Meghan P. Carter
Shelmun Dashan
LEGAL COUNCIL FOR HEALTH JUSTICE
17 N. State, Suite 900
Chicago, IL 60602
Phone: (312) 605-1958
Fax: (312) 427-8419
cchapman@legalcouncil.org
mcarter@legalcouncil.org
sdashan@legalcouncil.org

By */s/* \_\_Katherine E. Walz_____
Katherine E. Walz
Andrea Kovach
Militza M. Pagan
SHRIVER CENTER ON POVERTY LAW
67 E. Madison, Suite 2000
Chicago, IL 60603
Phone:    (312) 368-2679
Fax:        (312) 263-3846
katewalz@povertylaw.org
andreakovach@povertylaw.org
militzapagan@povertylaw.org

*Counsel for Illinois Coalition For Immigrant and Refugee Rights, Inc*.

14

## CERTIFICATE OF SERVICE

      The undersigned attorney hereby certifies that on December 5, 2019, the foregoing document was filed and served pursuant to the district court's CM/ECF system.

/s/ Meghan P. Carter