**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **COOK COUNTY, ILLINOIS,** *et al.*,<br><br>    *Plaintiffs*,<br><br>        v.<br><br>**CHAD F. WOLF,** in his official capacity as Acting Secretary of U.S. Department of Homeland Security, *et al.*,<br><br>    *Defendants*. | Civil Action No. 1:19-cv-06334<br><br>Hon. Gary S. Feinerman |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO CERTIFY THE COURT'S MAY 19 OPINION & ORDER FOR
INTERLOCUTORY APPEAL AND TO STAY DISCOVERY**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

ARGUMENT ............................................................................................................ 4

I.    An Immediate Appeal Will Materially Advance the Termination of this Litigation. .........5

II.   The May 19 Order Presents Controlling Questions Of Law As To Which There Is Substantial Ground For Difference Of Opinion....................................................9

    A.   Whether the Rule is subject to strict scrutiny folliwng the Supreme Court's decision in *Trump v. Hawaii* ..................................................................9

    B.   Whether statements and views of individuals other than the decision maker can support an equal protection claim. ......................................................12

    C.   Whether ICIRR is a Proper Party......................................................16

III.  The Court Should Stay Discovery. .................................................................19

CONCLUSION.........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ahrenholtz v. Board of Trustees of Univ. of Ill.*,

    219 F.3d 674 (7th Cir. 2000) ................................................... 5

*Ass'n of Data Processing Serv. Organizations, Inc. v. Camp*,

    397 U.S. 150 (1970)................................................................ 17

*Batalla Vidal v. Nielsen*,

    No. 16CV4756NGGJO, 2018 WL 10127043 (E.D.N.Y. Apr. 30, 2018)................................. 8

*Bayer Healthcare, LLC v. Norbrook Laboratories, Ltd.*,

    Nos. 08 C 953 & 09 C 108, 2010 WL 338089 (E.D. Wis. Jan. 20, 2010)................................ 9

*Cheney v. United States District Court for the District of Columbia*,

    542 U.S. 367 (2004)........................................................... *passim*

*City of Joliet v. Mid–City Nat. Bank*,

    No. 05 C 6746, 2008 WL 4889038 (N.D. Ill. Jun. 13, 2008) ................................... 9

*City of Joliet, Ill. v. New West, L.P.*,

    562 F.3d 830 (7th Cir. 2009) ................................................... 9

*Clarke v. Sec. Indus. Ass'n*,

    479 U.S. 388 (1987).............................................................. 17

*Clearwater v. Indep. Sch. Dist. No. 166*,

    231 F.3d 1122 (8th Cir. 2000) ................................................. 15

*Clinton v. Jones*,

    520 U.S. 681 (1997)............................................................ 7, 14

*Contreras v. City of Chicago*,

    920 F. Supp. 1370 (N.D. Ill. 1996) ........................................... 15

*Cook Cty., Illinois v. Wolf*,

    No. 19-3169, 2020 WL 3072046 (7th Cir. June 10, 2020)............................. 2, 8, 17

*Department of Commerce v. New York*,

    139 S. Ct. 2551 (2019) ................................................................................................ 3, 6

*Fiallo v. Bell*,

    430 U.S. 787 (1977) ...................................................................................................... 11

*Freeman v. Town of Hudson*,

    714 F.3d 29 (1st Cir. 2013) ........................................................................................... 18

*Gegiow v. Uhl*,

    239 U.S. 3 (1915) ........................................................................................................... 2

*Harisiades v. Shaughnessy*,

    342 U. S. 580 (1952) ..................................................................................................... 11

*Hawaii v. Trump*,

    138 S. Ct. 2392 (2018) ........................................................................................ *passim*

*Hoffman v. Carefirst of Ft. Wayne, Inc.*,

    No. 1:09–CV–251, 2010 WL 3940638 (N.D. Ind. Oct. 6, 2010) ................................. 9, 15, 17

*In re Brand Name Prescription Drugs Antitrust Litig.*,

    878 F. Supp. 1078 (N.D. Ill. 1995) ............................................................................ 9, 12

*Int'l Refugee Assistance Project v. Trump*,

    No. 19-1990, __ F.3d __, 2020 U.S. App. LEXIS 18022 (4th Cir. June 8, 2020) ............. 10, 14

*Johnson v. Burken*,

    930 F.2d 1202 (7th Cir. 1991) ....................................................................................... 9

*Kowalski v. Tesmer*,

    543 U.S. 125 (2004) ...................................................................................................... 18

*Landis v. N. Am. Co.*,

    299 U.S. 248 (1936) ...................................................................................................... 19

*Lujan v. Nat'l Wildlife Fed'n*,

    497 U.S. 871 (1990) ...................................................................................................... 17

*MainStreet Org. of Realtors v. Calumet City, Ill.*,

    505 F.3d 742 (7th Cir. 2007) ............................................................................... 18

*Massey v. Wheeler*,

    221 F.3d 1030 (7th Cir. 2000) ............................................................................. 18

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*,

    138 S. Ct. 1719 (2018) ......................................................................................... 13

*Mayor of Balt. v. Trump*,

    2019 U.S. Dist LEXIS 219262 (D. Md. Dec. 19, 2019) ....................................... 12

*Mohawk Indus., Inc. v. Carpenter*,

    558 U.S. 100 (2009) ............................................................................................... 4

*Nixon v. Fitzgerald*,

    457 U.S. 731 (1982) ......................................................................................... 7, 14

*Pers. Adm'r of Massachusetts v. Feeney*,

    442 U.S. 256 (1979) ............................................................................................. 15

*Rajah v. Mukasey*,

    544 F.3d 427 (2d Cir. 2008) ................................................................................ 11

*Simon v. Muschell*,

    No. 1:09-CV-301-JTM, 2014 WL 1651975 (N.D. Ind. Apr. 18, 2014) ................... 19

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*,

    86 F.3d 656 (7th Cir. 1996) ............................................................................. 9, 13

*Sunday Lake Iron Co. v. Wakefield Twp.*,

    247 U.S. 350 (1918) ............................................................................................. 18

*Terrell v. I.N.S.*,

    157 F.3d 806 (10th Cir. 1998) ............................................................................. 18

*United Airlines, Inc. v. Mesa Airlines, Inc.*,

    219 F.3d 605 (7th Cir. 2000) ................................................................................. 4

iv

*United States v. Brown*,

    299 F. Supp. 3d 976 (N.D. Ill. 2018) ............................................................ 15

*United States v. Burr*,

    25 F. Cas. 187 (No. 14,694)(CC Va. 1807) .................................................. 7

*United States v. Flores-Montano*,

    541 U.S. 149 (2004) .................................................................................. 11

*United States v. Moore*,

    644 F.3d 553 (7th Cir. 2011) .................................................................... 12

*Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*,

    429 U.S. 252 (1977) .................................................................................. 13

*Warth v. Seldin*,

    422 U.S. 490 (1975) .......................................................................... 16, 19

*Wolf v. Cook Cnty.*,

    140 S. Ct. 681 (2020) .................................................................................. 2

**Statutes**

8 U.S.C. § 1601(2) ............................................................................................ 13

28 U.S.C. § 1292(b) ............................................................................ 1, 4, 9, 20

**Rules**

Fed. R. Civ. P. 26(c) ........................................................................................ 19

**Regulations**

84 Fed. Reg. 41292 (Aug. 14, 2019) .......................................................... 2, 15

**INTRODUCTION**

The Court should certify its decision on the Department of Homeland Security's motion to dismiss plaintiff ICIRR's equal protection claim for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and stay discovery until the resolution of such interlocutory appeal proceedings. ICIRR has already made clear that it will seek discovery about decisions and deliberations of high-ranking White House officials, possibly including the President himself. Such discovery would raise significant separation-of-powers issues, and ICIRR's requests would likely result in substantial litigation regarding executive privilege and the appropriate scope of discovery in this case. If ICIRR's equal protection claim is dismissed, however, it is clear that such discovery, going outside the bounds of the administrative record, would be unnecessary. And dismissal of that claim is a real possibility: Adjudication of ICIRR's attempted equal protection claim presents novel and potentially dispositive legal questions on which there is substantial ground for difference of opinion.

As the Supreme Court has recognized, "[o]nce executive privilege is asserted, coequal branches of the Government are set on a collision course"—forcing the judiciary "into the difficult task of balancing the need for information in a judicial proceeding and the Executive's Article II prerogatives." *Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367, 385, 389-90 (2004). Because courts should avoid "occasions for constitutional confrontation between the two branches … whenever possible," the Court should authorize interlocutory appeal here. *Id.* at 390; *see also id.* at 391-92 ("the courts should be sensitive to requests by the Government for interlocutory appeals" in proceedings that are likely to impose significant burdens on the office of the President).

1

## **BACKGROUND**

On October 14, 2019, the Court issued a preliminary injunction against the Department of Homeland Security's final rule *Inadmissibility on Public Charge Grounds* ("Rule"), 84 Fed. Reg. 41292 (Aug. 14, 2019). *See* Mem. Op. & Order, Dkt. No. 86 ("PI Order"). The Court based its decision on the ground that, in its view, Plaintiffs were likely to prevail on their claim that the Rule conflicts with the Supreme Court's understanding of the term "public charge" in *Gegiow v. Uhl*, 239 U.S. 3 (1915). The Court did not pass judgment on Plaintiffs' other claims, including that the Rule allegedly violates the Equal Protection component of the Fifth Amendment Due Process Clause. DHS appealed, *Cook Cnty. v. Wolf*, No. 19-3169 (7th Cir.) (argued Feb. 26, 2020), and the Supreme Court stayed the preliminary injunction pending appeal, *Wolf v. Cook Cnty.*, 140 S. Ct. 681 (2020) (mem.). A divided Seventh Circuit panel recently affirmed the PI Order, but on alternative grounds. *See Cook Cty., Illinois v. Wolf*, No. 19-3169, 2020 WL 3072046 (7th Cir. June 10, 2020). In doing so, the majority found that Cook County satisfied prudential standing requirements, but expressly declined to resolve whether ICIRR was likewise a proper party in this suit. *See id.* at *6.

Meanwhile, DHS moved to dismiss all of plaintiffs' claims on the merits, Dkt. No. 124, and plaintiff ICIRR moved for discovery beyond the administrative record on its equal protection claim, Dkt. No. 111. The Court denied DHS's motion to dismiss and granted ICIRR's motion for extra-record discovery. Mem. Opinion & Order, Dkt. No. 150 ("Order"). The Court held that it had already rejected most of DHS's argument—that plaintiffs were not appropriate parties to challenge the regulation, that the suit is not ripe, and that plaintiffs' APA claims fail as a matter of law—in its PI Order, and noted that those issues were being considered by the Seventh Circuit on appeal. *Id.* at 2.

2

As for ICIRR's equal protection claim, the Court analyzed the merits of that claim for the first time and held that ICIRR's allegations were sufficient to support its equal protection claim. In so holding, the Court held that the Supreme Court's decision in *Hawaii v. Trump*, 138 S. Ct. 2392 (2018), does not apply to ICIRR's equal protection allegations, and that the Rule is instead subject to strict scrutiny. Order 14-16. The Court held that the Supreme Court's analysis in *Hawaii* is inapplicable because—unlike here—the policy at issue in *Hawaii* implicated "national security concerns," and involved a statutory provision that "provides for expansive discretion to be exercised by the President." *Id.* In applying strict scrutiny to the Rule, the Court also relied on alleged statements by various non-DHS officials that have no express connection to the Rule. The Court held that general statements made by both the President and Senior White House advisor Stephen Miller support ICIRR's claim that the Rule was promulgated for unlawful purposes because ICIRR alleges that Miller was the "architect" of the public charge rule, and that the President was aware that DHS would consider whether to issue a new "public charge" rule. Order at 17-19. The Court also noted that "the Supreme Court has made clear that the President exercises ultimate control over the actions of agencies like DHS." *Id.* at 19.

Having concluded that ICIRR's equal protection claim survived DHS's motion to dismiss, the Court went on to grant ICIRR's motion for discovery. Order 20-29. The Court held that under *Department of Commerce v. New York*, 139 S. Ct. 2551 (2019), ICIRR would be entitled to extra-record discovery on its equal-protection claim "regardless of whether it can satisfy the 'strong showing' [of bad faith] applicable to APA claims." Order 25 (citation omitted). In the alternative, the Court held that "ICIRR satisfies the 'strong showing' standard in any event," *id.*, because it had made a "strong showing of an incomplete administrative record," and "a strong showing that DHS's stated reason for promulgating the Final Rule—protecting the fisc—obscures what ICIRR

alleges is the real reason—disproportionately suppressing nonwhite immigration," *id.* at 26. In so holding, the Court indicated that ICIRR would be entitled to discovery from Senior White House advisor Stephen Miller and other high-ranking executive officials. *See id.* 26-27. The Court noted that it would consider at a later time "the nature and extent of the discovery to which ICIRR is entitled." *Id.* at 30.

The government now respectfully requests that the Court certify its May 19 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## ARGUMENT

The Court should certify its May 19 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) because an immediate appeal will "materially advance the ultimate termination of the ligation," and the order involves "controlling question[s] of law as to which there is a substantial ground for difference of opinion." 28 U.S.C. § 1292(b). When a ruling satisfies the § 1292(b) criteria and "involves a new legal question or is of special consequence," a district court "should not hesitate to certify an interlocutory appeal." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009). The court need only identify one controlling question of law that satisfies § 1292(b) to certify the entire order for appeal. *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 609 (7th Cir. 2000) ("[A]n appeal under § 1292(b) brings up the whole certified order, rather than just the legal issue that led to certification.") (internal citation omitted).

The May 19 Order meets the requirements of § 1292(b). An immediate appeal will materially advance the termination of this litigation, as resolution by the court of appeals may foreclose ICIRR's equal protection claims and could obviate both the possibility of discovery against the sitting President and other high-ranking officials, as well as the possibility of protracted litigation that might flow from such discovery. Additionally, the May 19 Order presents controlling

4

questions of law as to which there is substantial ground for difference of opinion: (1) whether, notwithstanding *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), the Rule is subject to strict scrutiny; (2) whether ICIRR can rely on statements by officials outside of DHS and not directly related to the Rule in order to establish that DHS adopted the Rule in order to achieve discriminatory ends; and (3) whether ICIRR is a proper plaintiff to assert its claims.

Additionally, the Court should stay discovery in this action pending this Court's resolution of DHS's certification motion, the Seventh Circuit's resolution of any petition for interlocutory appeal, and final resolution of any interlocutory appeal.

## I. <u>An Immediate Appeal Will Materially Advance the Termination of this Litigation.</u>

Immediate appeal of the May 19 Order will "materially advance the termination" of this litigation. As the Seventh Circuit has recognized, that requirement is met where immediate appeal "promise[s] to speed up the litigation." *Ahrenholtz v. Board of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). Absent interlocutory appeal, this case will proceed toward contentious discovery disputes raising difficult issues of executive privilege, discovery that the government continues to contend is not warranted under a proper application of the Supreme Court's analysis in *Department of Commerce*. But if the Seventh Circuit determines that ICIRR's equal protection claim must be dismissed, that aspect of this litigation—including ICIRR's request for discovery from the President and other high-ranking executive officials—would terminate.

Plaintiffs' remaining claims have largely been resolved by the Seventh Circuit's recent ruling, and can certainly be resolved in this Court without the need for discovery beyond the administrative record. ICIRR's equal protection claim is therefore likely to be among the last claims resolved in this case unless it is dismissed now. Thus, interlocutory appeal of the Court's

Order may advance the termination of this litigation by removing the equal protection claim from the case.

The possibility of discovery against high-ranking White House officials in this action makes immediate appellate review essential. ICIRR recently moved for expedited discovery on its equal protection claim. *See* Mot. for Exp. Discovery on Equal Protection Claim, Dkt. No. 157. In its motion, ICIRR explains that the "initial discovery" it seeks includes "any documents or communications between DHS or DHS components and the White House related to the purpose, effect, or potential impact of the Public Charge Rule on individuals by national origin, race, or ethnic group" as well as various other "documents or communications . . . shared [with] the White House[.]" *Id*. at 7-8. It also intends to depose senior White House advisor Stephen Miller and other high-ranking government officials. *Id*. at 8. And although the White House is not a party to this case, ICIRR apparently seeks discovery directly from the White House because it lists Mr. Miller and Mick Mulvaney as proposed custodians. *See* Dkt. No. 157-2, at 9. This is only ICIRR's "initial discovery" which it may use to "seek preliminary relief," Dkt. No. 157, at 7-8, suggesting that it will later seek still further discovery.

ICIRR's' proposed discovery into the subjective, individual motivations of the President and his advisors in taking official actions in their official capacity raises significant separation-of-powers issues, and the opportunity to narrow or terminate this litigation before this case proceeds to discovery should be given substantial weight. *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019) ("judicial inquiry into 'executive motivation,'" beyond the administrative record, "represents 'a substantial intrusion' into the workings of another branch of Government and should normally be avoided."). The Supreme Court has specifically held that courts should avoid these difficult issues, if at all possible:

6

> [o]nce executive privilege is asserted, coequal branches of the
> Government are set on a collision course. The Judiciary is forced
> into the difficult task of balancing the need for information in a
> judicial proceeding and the Executive's Article II prerogatives. This
> inquiry places courts in the awkward position of evaluating the
> Executive's claims of confidentiality and autonomy, and pushes to
> the fore difficult questions of separation of powers and checks and
> balances. These occasions for constitutional confrontation between
> the two branches should be avoided whenever possible.

*Cheney*, 542 U.S. at 389-90. Here, immediate appellate review offers an opportunity to avoid

imminent "constitutional confrontation" by significantly narrowing the scope of this litigation and

eliminating the need for discovery altogether.

Avoiding the possibility of protracted litigation regarding discovery is a particularly

compelling reason to certify the May 19 Order because of "the unique position in the constitutional

scheme that [the Office of the Presidency] occupies." *Clinton v. Jones*, 520 U.S. 681, 698 (1997).

The Supreme Court has repeatedly held that the President is not an ordinary defendant in civil

litigation. *See id.* at 707 ("The high respect that is owed to the office of the Chief Executive . . . is

a matter that should inform the conduct of the entire proceeding."); *Cheney*, 542 U.S. at 381-82

("'[I]n no case would a court be required to proceed against the president as against an ordinary

individual'" (alterations omitted) (quoting *United States v. Burr*, 25 F. Cas. 187, 192 (No. 14,694)

(CC Va. 1807) (Marshall, C.J.))). Instead, "the Executive's 'constitutional responsibilities and

status are factors counseling judicial deference and restraint' in the conduct of litigation against

it." *Cheney*, 542 U.S. at 385 (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 753 (1982)). Indeed,

"special considerations control when the Executive Branch's interests in maintaining the autonomy

of its office and safeguarding the confidentiality of its communications are implicated." *Id.* These

"special considerations" alone warrant immediate appellate review in light of ICIRR's requests for

discovery from high-ranking executive officials. *See id.* at 391-92 (noting that "all courts should

be mindful of the burdens imposed on the Executive Branch in any future proceedings" and

explaining that "[s]pecial considerations applicable to the President and the Vice President suggest that the courts should be sensitive to requests by the Government for interlocutory appeals").

There is precedent for granting a motion for interlocutory appeal in these circumstances. The Eastern District of New York recently granted a motion for interlocutory appeal of an order finding that plaintiffs stated a plausible equal protection claim based on the "rescission of the Deferred Action for Childhood Arrivals" program. *Batalla Vidal v. Nielsen*, No. 16CV4756NGGJO, 2018 WL 10127043, at *1 (E.D.N.Y. Apr. 30, 2018). There, as here, the plaintiffs relied heavily on remarks by the President, and the Court concluded that an interlocutory appeal was warranted since there was room for disagreement on whether these statements give rise to a plausible equal protection claim, and because resolution of this issue could "substantially narrow the scope of discovery." *Id.* In its conclusion, the court stated: "[A]t the risk of stating the obvious . . . these are not ordinary cases. Plaintiffs challenge a major change of nationwide immigration policy by the Executive Branch. In so doing, they claim that this change was substantially motivated by the President's alleged discriminatory bias. In these circumstances, the court has little difficulty concluding that its [Order] not only satisfies [the § 1292(b)] criteria, but also involves a new legal question [and] is of special consequence. Accordingly, the court does not hesitate to certify an interlocutory appeal." *Id.* at *4 (internal quotation marks omitted). The same reasoning applies here.

## II. The May 19 Order Presents Controlling Questions Of Law As To Which There Is Substantial Ground For Difference Of Opinion.

The May 19 Order presents three controlling questions of law as to which "there is substantial ground for difference of opinion." 28 U.S.C. § 1292(b). Each question independently warrants certification of the Order by this Court.

"A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). "It is enough that the question is serious to the conduct of the litigation, either practically or legally." *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991).

As for the requirement that "substantial ground for difference of opinion" exists, courts consider numerous factors. The novelty of an issue may demonstrate that the requirement is satisfied. *See City of Joliet v. Mid–City Nat. Bank,* No. 05 C 6746, 2008 WL 4889038, at *2 (N.D. Ill. Jun. 13, 2008) (granting motion to certify appeal), *aff'd sub nom. by City of Joliet, Ill. v. New West, L.P.,* 562 F.3d 830 (7th Cir.2009); *Bayer Healthcare, LLC v. Norbrook Laboratories, Ltd.,* Nos. 08 C 953 & 09 C 108, 2010 WL 338089, at *5 (E.D. Wis. Jan. 20, 2010) (issue of first impression created a substantial ground for difference of opinion). An issue may also be certifiable if it presents a "difficult central question of law which is not settled by controlling authority" and a "substantial likelihood" exists that the district court's ruling will be reversed on appeal. *In re Brand Name Prescription Drugs Antitrust Litig.,* 878 F. Supp. 1078, 1081 (N.D. Ill. 1995). Finally, the existence of conflicting authority may indicate that an issue is contestable. *See Hoffman v. Carefirst of Ft. Wayne, Inc.,* No. 1:09–CV–251, 2010 WL 3940638, at *2 (N.D. Ind. Oct. 6, 2010) (collecting cases).

9

### A. Whether the Rule is subject to strict scrutiny following the Supreme Court's decision in *Trump v. Hawaii*

The Court should certify the question of whether strict scrutiny applies to ICIRR's equal protection claim, notwithstanding the Supreme Court's articulation of a more deferential standard of review in *Trump v. Hawaii*. That question is controlling. ICIRR does not seriously contend that its equal protection claim could succeed if this Court were to apply the deferential standard of review that the Supreme Court applied in *Hawaii*. Nor could it: There is no doubt that the Rule—which was based on an extensive administrative record and lengthy discussion in the Federal Register—can at least "reasonably be understood to result from a justification independent of unconstitutional grounds." *Hawaii*, 138 S. Ct. at 2420; *see also Int'l Refugee Assistance Project v. Trump*, No. 19-1990, __ F.3d __, 2020 U.S. App. LEXIS 18022, at *29-45 (4th Cir. June 8, 2020) (in appeal of pursuant to Section 1292(b), applying *Hawaii* standard and ruling that district court should have dismissed constitutional claims). Thus, unless the standard applied in *Hawaii* is inapplicable to ICIRR's equal protection claim, that claim must be dismissed.

Substantial ground for difference of opinion exists as to whether the Rule must be subjected to strict scrutiny notwithstanding *Hawaii*. Much of the Supreme Court's reasoning in *Hawaii* applies with full force to this case. DHS's public charge rule applies both to decisions made by U.S. Citizenship and Immigration Services about adjustment of status to that of a lawful permanent resident and to admission determinations made by U.S. Customs and Border Protection. So here, as in *Hawaii*, the constitutional challenge implicates the Executive Branch's authority over the admission and exclusion of foreign nationals, "a matter within the core of executive responsibility." *Hawaii*, 138 S. Ct. at 2418; *id*. at 2419 (highly deferential standard is appropriate "[g]iven the authority of the political branches over admission"). Indeed, this "deferential standard of review" applies "across different contexts and constitutional claims" because "'it is not the

judicial role in cases of this sort to probe and test the justifications of immigration policies" if those policies are "facially legitimate and bona fide." *Id*. at 2419-20; *see also id.* at 2419 (citing *Rajah v. Mukasey*, 544 F.3d 427 (2d Cir. 2008), where Second Circuit applied deferential review to statute that collected data about certain aliens living in the United States).

The Court held that that strict scrutiny rather than *Hawaii*'s deferential standard applies here since the stated justification for the Rule is economic, whereas the policy at issue in *Hawaii* was justified by national security and foreign relations concerns. Order 15. But controlling the flow of persons across the U.S. national borders always is core to our national security, even when the fiscal consequences of that flow are the point of emphasis. *See Hawaii*, 138 S. Ct. at 2418 ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] the war power.") (quoting *Harisiades v. Shaughnessy*, 342 U. S. 580, 588-89 (1952)); *see also United States v. Flores-Montano*, 541 U.S. 149, 152 (2004) ("The Government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border."). In all events, *Hawaii* made clear that its deferential standard applies "across different contexts and constitutional claims." 138 S. Ct. at 2419. In support, the Court cited *Fiallo v. Bell*, 430 U.S. 787 (1977), a paternity/legitimacy case in which the Court had rejected the same type of reasoning as advanced by the Court here. *See id*. at 796 (rejecting characterization of "prior immigration cases as involving foreign policy matters and congressional choices to exclude or expel groups of aliens that were specifically and clearly perceived to pose a grave threat to the national security . . . or to the general welfare of this country").

Similarly, the fact that the underlying statute at issue in *Hawaii* arguably gives the President broader authority than the public charge provision is a distinction without a difference. The

Supreme Court's analysis was grounded not on the scope of the authority conveyed in the particular statutory provision, but in its recognition that the admission and exclusion of foreign nationals in general "is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Id.* at 2418. There is no dispute that this case directly implicates the government's policies regarding the admissibility of aliens.

There is thus "substantial ground for difference of opinion" about whether *Hawaii* controls here. *Hawaii* is a recent decision and the question whether its reasoning applies to different contexts is a "difficult central question of law which is not settled by controlling authority." *In re Brand Name Prescription Drugs,* 878 F. Supp. at 1081. Indeed, the District of Maryland recently held that the deferential standard from *Hawaii* governed an equal protection challenge to an agency interpretation of the public charge inadmissibility statute. *See Mayor of Balt. v. Trump*, 2019 U.S. Dist. LEXIS 219262, at *27-33 (D. Md. Dec. 19, 2019) ("[T]raditional equal protection analysis does not apply to actions pertaining to the entry of foreign nationals."). Thus, there is a demonstrated difference of opinion on this controlling question. The Court should certify that question for review so that the Seventh Circuit may answer that legal question before this case proceeds to contentious discovery that is likely to raise thorny issues regarding separation of powers and executive privilege.

### B. Whether statements and views of individuals other than the decision maker can support an equal protection claim.

The Court should also certify the question whether ICIRR can rely on public statements from non-DHS officials, made without reference to the Rule, in order to show that "the decision maker"—here, DHS—issued the Rule "at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *United States v. Moore*, 644 F.3d 553, 558 (7th Cir. 2011). That question is controlling. In support of its equal protection claim, ICIRR principally relied on

statements from the President, senior White House advisor Stephen Miller, and other non-DHS officials. If the Seventh Circuit holds that ICIRR's equal protection claim must instead be based upon statements by the DHS officials whose decision ICIRR is challenging, it is "quite likely" that such a decision would result in ICIRR's equal protection claim being dismissed. *Sokaogon Gaming*, 86 F.3d at 659.

And there is "substantial ground for difference of opinion" about whether statements made by non-DHS officials can demonstrate that "the decision maker" issued the Rule for some unlawful purpose. There is no dispute that, in cases not subject to the deferential *Hawaii* standard, "contemporary statements" may be relevant to the question of whether an "invidious discriminatory purpose was a motivating factor," if made "*by members of the decisionmaking body.*" *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 268 (1977) (emphasis added); *see also Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*, 138 S. Ct. 1719, 1732 (2018) (emphasizing "official expressions of hostility to religion in some of *the commissioners'* comments" that "were not disavowed at the Commission or by the State at any point") (emphasis added). But ICIRR relies almost exclusively on alleged public statements by *non-DHS* officials in order to show that the Rule was intended, in part, to harm a certain racial sub-group. Furthermore, the vast majority of the alleged public statements in the Complaint reflect only general views on immigration and have no direct relationship to the Rule. *See* Compl. ¶¶ 173-76. And the few statements that even *arguably* relate to the Rule are consistent with DHS's stated, non-discriminatory justifications for the Rule, including the need to incentivize self-sufficiency. *See* Compl. ¶ 178 ("new immigration rules" must ensure that "those seeking admission into our country must be able to support themselves financially"); Compl. ¶ 180 (aliens may come "*from all the countries of the world*" regardless of "whether they can pay their own way" (emphasis

13

added)); *see also* 8 U.S.C. § 1601(2) (congressional policy statement that it "continues to be the immigration policy of the United States that (A) aliens within the Nation's borders not depend on public resources to meet their needs, but rather rely on their own capabilities and the resources of their families, their sponsors, and private organizations, and (B) the availability of public benefits not constitute an incentive for immigration to the United States").

The Court concluded that those statements are nevertheless relevant because the President—and by extension his senior advisors—exercise "ultimate control over the actions of agencies like DHS." Order 19. But while the President of course has "ultimate control" over an executive agency's decisions, and while the agency is in turn accountable to the President if it adopts a policy with which he disagrees, that does not automatically make general statements by the President and other senior executive officials relevant evidence about why an agency took a specific, facially neutral action. *Cf. Hawaii*, 138 S. Ct. at 2418 (refusing "to probe the sincerity of the stated justifications" for challenged policy "by reference to extrinsic statements" made by the President before taking office); *Int'l Refugee Assistance Project*, 2020 U.S. App. LEXIS 18022, at *37 (district court erred by "moving past the face of the Proclamation to consider in its analysis external statements made by the President").

Indeed, such a rule would produce bizarre results. If the President's "ultimate control" over agencies were enough to make the President's general thoughts and motivations relevant to any agency decision-making process, the Office of the President could be pulled into *any* administrative dispute, imposing exactly the kinds of litigation burdens that the Supreme Court has cautioned against. *See Cheney*, 542 U.S. at 385 ("[T]he Executive's 'constitutional responsibilities and status are factors counseling judicial deference and restraint' in the conduct of litigation against it." (quoting *Nixon*, 457 U.S. at 753); *Clinton*, 520 U.S. at 707 ("The high respect

that is owed to the office of the Chief Executive . . . is a matter that should inform the conduct of the entire proceeding.").

Even if general statements made by the President and his advisors could be relevant to ICIRR's equal protection claim, those statements are insufficient to demonstrate that the Rule was issued for some reason other than its stated purpose. *See Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 275, 279 (1979) ("the [stated] purposes of the" Rule "provide the surest explanation for its" design and implementation). The Rule's preamble (spanning roughly 200 pages) thoroughly explains the Rule's non-discriminatory justifications, including the need to facilitate self-sufficiency among immigrants. *See* Rule at 41295 ("DHS is revising its interpretation of 'public charge' . . . to better ensure that aliens subject to the public charge inadmissibility ground are self-sufficient"); Rule at 41308 ("DHS believes [the] broader definition [of public charge] is consistent with Congress' intention that aliens should be self-sufficient.").

The question what weight—if any—can be given to statements made outside of DHS's decisionmaking process also warrants review because it is the subject of conflicting authority. *See Hoffman*, 2010 WL 3940638, at *2. Other courts have held in analogous circumstances that statements made "by nondecisionmakers, or statements by decisionmakers but unrelated to the decision process" do not establish the requisite "discriminatory animus in the decisional process." *Clearwater v. Indep. Sch. Dist. No. 166*, 231 F.3d 1122, 1126 (8th Cir. 2000); *United States v. Brown*, 299 F. Supp. 3d 976, 1015 (N.D. Ill. 2018) ("Agent Gomez's personal comments do little to prove that the decisionmakers in this case targeted Defendants because of their race."). Nor does the fact that certain nondecisionmakers might have encouraged or prompted the decisionmaker to take certain action make the motivations or views of those nondecisionmakers relevant. *Contreras v. City of Chicago*, 920 F. Supp. 1370, 1403-04 (N.D. Ill. 1996) (even if the two individuals

requesting the investigation "harbor[ed] discriminatory animus," and "that animus may have motivated" their request, there was no indication that the City "responded to [their request] *because of* their racial animosity rather than merely *in spite of* it").

And although the Court also relied on a statement by Mr. Cuccinelli, Order 12—then Acting Director of U.S. Citizenship and Immigration Services—this alone would be insufficient to establish a plausible equal protection claim. Indeed, Plaintiffs—and the Court—relied only on a single statement Mr. Cuccinelli made during an interview in response to an abstract question concerning the meaning of the poem *The New Colossus*.[1] Order 12. This statement says nothing of why Mr. Cuccinelli supports the Rule, and elsewhere in the interview Mr. Cuccinelli specifically (and repeatedly) states that he supports the Rule because "self-sufficiency is a central part of America's proud heritage," and that "all [the Rule] does" is reflect the principle that "people coming to this country" are "expected to be able to support themselves." *See* CNN, *Burnett challenges Cuccinelli on new immigration rule*, YouTube (Aug. 13, 2019).

### C. Whether ICIRR is a Proper Party

Defendants recognize that this Court concluded that ICIRR has constitutional and prudential standing to sue. *See* Order at 2; PI Order at 10-15. However, especially in light of the Seventh Circuit's opinion affirming the Court's preliminary injunction, there is substantial ground for difference of opinion on whether ICIRR is "a proper party to invoke judicial resolution of the dispute[s]" in this litigation. *Warth v. Seldin*, 422 U.S. 490, 518 (1975). That question is

---

[1] To be clear, Cuccinelli did not state that the principles in this poem referred only to immigrants from Europe. In response to a question concerning the poem in general, he was instead providing the relevant historical context, and noted only that the poem's use of the term "wretched refuse," at the time, referred to certain people who were not "in the right class" within the "class based societies" of Europe.

controlling. Resolution of this issue would determine whether the equal protection claim may proceed at all, since only ICIRR asserts an equal protection claim.

A plaintiff may assert a claim only if it shows that its alleged injury comes within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Ass'n of Data Processing Serv. Organizations, Inc. v. Camp*, 397 U.S. 150, 153 (1970); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990) ("[T]he plaintiff must establish that the injury [it] complains of ([its] aggrievement, or the adverse effect upon [it]) falls within the 'zone of interests' sought to be protected by the" legal provision which "forms the legal basis for [its]" claim). A plaintiff falls outside the zone of interests when its "interests are . . . marginally related to or inconsistent with the purposes implicit in the" legal provision. *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).

Here, the Seventh Circuit concluded that Cook County's asserted interests fell within the zone of interests of the relevant statutory provision, but it declined to reach the same conclusion for ICIRR:

> We recognize that [ICIRR] asserts that it has suffered a financial burden directly attributable to the Rule. And we accept that ICIRR helps immigrants navigate the INA's various requirements, including the public-charge rule, and it has an interest in ensuring that immigrants are not improperly denied adjustment of status or removed from the country because of confusion over DHS's Rule. But the link between these injuries and the purpose of the public-charge part of the statute is more attenuated, and thus it is harder to say that the injury ICIRR has asserted meets the 'zone-of-interests' test.

*Cook Cty.*, 2020 WL 3072046, at *6. Since it found that Cook County, at least, was a proper plaintiff in this case, the court did "not resolve ICIRR's status definitively, and . . . limit[ed] [its] discussion in the remainder of the opinion to Cook County." *Id.* at *6.

The Seventh Circuit's reasoning—that "the link between [ICIRR's alleged] injuries and the purpose of" the INA's public charge provision is "attenuated"—applies fully to the equal protection claim. "The purpose of the equal protection clause" is to "secure every person . . . against intentional and arbitrary discrimination." *Sunday Lake Iron Co. v. Wakefield Twp.*, 247 U.S. 350, 352 (1918). Of course, ICIRR does not allege that *it* was subject to any discrimination; rather, it alleges that the "Rule violates the right to equal protection under the law of non-citizen immigrants of color and Latino immigrants from majority non-white countries." Compl. ¶ 185. The alleged harms to ICIRR's finances and activities are too "attenuated" from the narrow interests protected by the equal protection component of the due process clause.

ICIRR's standing must be premised on its own injuries, as it properly has not asserted a right to raise claims on behalf of others under the limited doctrine of third-party standing.[2] *See*, *e.g.*, *Kowalski v. Tesmer*, 543 U.S. 125, 133 (2004) (finding attorneys lacked third-party standing to assert an equal protection claim for potential clients); *Terrell v. I.N.S.*, 157 F.3d 806, 809 (10th Cir. 1998) (plaintiff did "not satisfy the requirements of third-party standing" for her equal protection claim that an INA provision unlawfully discriminates against U.S. citizen fathers); *Freeman v. Town of Hudson*, 714 F.3d 29, 39 (1st Cir. 2013) (Plaintiff did not have third-party standing to bring his equal protection claim, even though he "conceivably suffered some economic harm as a result of" the conduct at issue, since that conduct "concerned not [Plaintiff's] rights but

---

[2] To the extent that ICIRR sought to assert the equal protect rights of other parties, the third-party standing doctrine would prevent it from doing so. Generally, "one cannot sue in a federal court to enforce someone else's legal rights." *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 746 (7th Cir. 2007). "The Supreme Court has established a narrow exception to this doctrine, allowing third-party claims when the third-party plaintiff can show a close relationship between the first and third party and some obstacle to the first party's ability to protect his own interest." *Massey v. Wheeler*, 221 F.3d 1030, 1035 (7th Cir. 2000). Here, however, ICCIR has not alleged the requisite "close relationship" to individual rights holders' who cannot assert their own rights because of "obstacle[s]" that prevent them from "protect[ing] [their] own interest[s]." *Id.*

those of [his] customer."). Based on the mismatch between ICIRR's injuries and the equal protection component of the due process clause, ICIRR is not "a proper party to invoke judicial resolution of" its equal protection claim, *see Warth*, 422 U.S. at 518, or at least there is substantial ground for difference of opinion on this issue that warrants prompt consideration by the Seventh Circuit before the case proceeds further.

### III.  The Court Should Stay Discovery.

The Court should stay discovery pending its resolution of DHS's certification motion, the Seventh Circuit's resolution of any petition for interlocutory appeal, and final resolution of any interlocutory appeal. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Simon v. Muschell*, No. 1:09-CV-301-JTM, 2014 WL 1651975, at *2 (N.D. Ind. Apr. 18, 2014) ("Rule 26(c)(1)(a) provides that, 'the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery.' Courts have recognized that securing a just, speedy, and inexpensive determination of every action is good cause to stay discovery pending the outcome of dispositive motions." (quoting Fed. R. Civ. P. 26(c)).

As noted above, ICIRR is seeking to take substantial discovery in this action, which is directed at high-ranking executive officials and their motivations for taking official, discretionary actions. *See* Dkt. 157. As discussed, the discovery sought by plaintiff will raise significant issues of executive privilege and separation of powers. The Supreme Court has stated that such "occasion[s] for constitutional confrontation between the two branches should be avoided whenever possible." *Cheney*, 542 U.S. at 389-90 (quotation marks omitted). Moreover, in the

context of discovery directed at the Vice President, the Supreme Court has observed that "[s]pecial considerations control when the Executive Branch's interests in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated." *Id.* at 385.

Certification under § 1292(b) may make it unnecessary to resolve these thorny separation-of-powers questions in connection with discovery in this case. If discovery proceeds while the Court decides the DHS's certification motion or while the Seventh Circuit considers issues in connection with an appeal, however, that possibility would be lost. Thus, there is "good cause" to forbear commencing discovery until decision on the certification motion and any petition to the Seventh Circuit and, if the petition is granted, the final resolution of any interlocutory appeal.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should the Court should certify the May 19 Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and stay discovery pending this Court's resolution of DHS's certification motion, the Seventh Circuit's resolution of any petition for interlocutory appeal, and final resolution of any interlocutory appeal.

Dated: June 16, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

/s/ Kuntal Cholera
ERIC J. SOSKIN
Senior Trial Counsel
KERI L. BERMAN
KUNTAL V. CHOLERA
JOSHUA M. KOLSKY, DC Bar No. 993430
Trial Attorneys

U.S. Dept. of Justice, Civil Division,
Federal Programs Branch
1100 L Street, N.W., Rm. 12002
Washington, DC 20001
Phone: (202) 305-8645
Fax: (202) 616-8470
Email: kuntal.cholera@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2020, I electronically filed a copy of the foregoing.

Notice of this filing will be sent via email to all parties by operation of the Court's electronic

filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ Kuntal Cholera
Kuntal Cholera