**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **COOK COUNTY, ILLINOIS,** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **CHAD F. WOLF,** in his official capacity as Acting Secretary of U.S. Department of Homeland Security, *et al.,* <br><br> *Defendants*. | **Civil Action No. 1:19-cv-06334** <br><br> **Hon. Gary S. Feinerman** |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF ICIRR'S MOTION FOR
EXPEDITED DISCOVERY ON EQUAL PROTECTION CLAIM**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD........................................................................................................... 1

ARGUMENT....................................................................................................................... 2

I.  This Case is Not Amenable to Expedited Discovery...........................................................2

II. Plaintiff Has Not Shown that Expedited Discover is Appropriate ....................................4

III. Plaintiff's Proprosed Discovery Schedule is Unreasonable and Unrealistic ......................9

CONCLUSION.................................................................................................................. 13

ii

## TABLE OF AUTHORITIES

**Cases**

*Bogan v. City of Boston*,

    489 F.3d 417 (1st Cir. 2007).......................................................................................... 3

*Cheney v. United States District Court for the District of Columbia*,

    542 U.S. 367 (2004)................................................................................................... 3, 4

*Cook Cty. v. Wolf*,

    No. 19-3169, 2020 U.S. App. LEXIS 18242 (7th Cir. June 10, 2020)....................................... 8

*Dep't of Commerce v. New York*,

    139 S. Ct. 2551 (2019)................................................................................................. 3

*Dep't of Homeland Sec. v. New York*,

    140 S. Ct. 599 (2020)................................................................................................. 9

*Edgenet, Inc. v. Home Depot U.S.A., Inc.*,

    259 F.R.D. 385 (E.D. Wis. 2009) ............................................................................ 2, 3, 6

*Fluke Elecs. Corp. v. CorDEX Instruments, Inc.*,

    2013 U.S. Dist. LEXIS 19540 (W.D. Wash. Feb 13, 2013)......................................................... 5

*In re USA*,

    542 F. App'x. 944 (Fed. Cir. 2013)................................................................................ 3

*In re USA*,

    624 F.3d 1368 (11th Cir. 2010) ................................................................................... 3

*Lederman v. New York City Dep't of Parks & Recreation*,

    731 F.3d 199 (2d Cir. 2013)...................................................................................... 3, 4

*Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*,

    194 F.R.D. 618 (N.D. Ill. 2000)............................................................................... 2, 6, 7

*N. Atl. Operating Co. v. Evergreen Distribs., LLC*,

    293 F.R.D. 363, 368 (E.D.N.Y. 2013) ............................................................................ 9

*Orlando v. CFS Bancorp, Inc.*,

    2013 U.S. Dist. LEXIS 20286 (N.D. Ind. Oct. 10, 2013) ....................................................... 5, 13

*Simplex Time Recorder Co. v. Sec'y of Labor*,

    766 F.2d 575 (D.C. Cir. 1985) ................................................................................................ 3

*United States v. Morgan*,

    313 U.S. 409 (1941) ................................................................................................................ 3

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,

    429 U.S. 252 (1977) ................................................................................................................ 3

*Wolf v. Cook County*,

    140 S. Ct. 681 (2020) .............................................................................................................. 6

## INTRODUCTION

Plaintiff Illinois Coalition for Immigrant and Refugee Rights, Inc. ("ICIRR") has moved for expedited discovery on its equal protection claim in this case. The Court should deny the motion in full. Plaintiff seeks expedited discovery about decisions and deliberations of high-ranking White House and agency officials. The proposed discovery raises significant separation-of-powers concerns that cannot reasonably be litigated and resolved on an expedited basis. Instead of granting expedited discovery, this Court should instead grant Defendants' motion—filed today—to certify the Court's May 19 Order for interlocutory appeal. As explained in that motion, interlocutory appeal will allow the Seventh Circuit to weigh in on potentially dispositive legal issues presented by ICIRR's equal protection claim, thereby allowing the Court and the parties to avoid extensive litigation over the discovery ICIRR intends to seek.

Moreover, Plaintiff has not demonstrated that it will suffer irreparable harm in the absence of expedited discovery sufficient to justify imposing enormous burdens on Defendants to attempt to comply with Plaintiff's unrealistic schedule. Instead, Plaintiff attempts to rely on harms allegedly suffered by others, including its co-plaintiff Cook County, which is not pursuing an equal protection claim and is not seeking discovery. Lastly, Plaintiff's proposed schedule fails to take into account the time necessary to resolve Defendants' objections or to search for and review the massive quantity of documents that likely would result from Plaintiff's broad proposed search parameters. For these reasons, as discussed further below, Plaintiff has not met its burden to show that expedited discovery is appropriate here.

## LEGAL STANDARD

There are two standards that courts apply to motions for expedited discovery. In some cases, courts require the moving party to show "(1) irreparable injury; (2) some probability of

success on the merits; (3) some connection between expedited discovery and avoidance of the irreparable injury; and (4) some evidence that injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000). These "*Notaro* factors" "are much the same" as the "factors to be considered for issuance of a preliminary injunction[.]" *Id.* In other cases, courts have instead considered the "reasonableness of the request in light of all of the surrounding circumstances." *Id.* at 624.

Courts have "applied the *Notaro* test in cases," such as this, "in which a party claims that 'without expedited discovery and the resulting earlier trial they [would] suffer irreparable damage.'" *Edgenet, Inc. v. Home Depot U.S.A., Inc.*, 259 F.R.D. 385, 386-87 (E.D. Wis. 2009). In contrast, the "reasonableness test should be used" "where there is a pending motion for a preliminary injunction[.]" *Id.* at 386 n.2 (internal quotation marks omitted). Where "there is no pending motion for a preliminary injunction, . . . the *Notaro* test is appropriate." *Id.* Here, for the reasons discussed below, Plaintiff's motion should be denied regardless of whether the *Notaro* test or the reasonableness test is applied.

## ARGUMENT

### I.   This Case is Not Amenable to Expedited Discovery

Expedited discovery is especially unreasonable in light of the significant separation-of-powers issues raised by ICIRR's proposed discovery – issues that will need to be resolved through litigation and appeals, if necessary, before discovery can be taken. ICIRR seeks expedited discovery about decisions and deliberations of high-ranking White House and agency officials. For instance, ICIRR seeks "any documents or communications between DHS or DHS components and the White House related to the purpose, effect, or potential impact of the Public Charge Rule on individuals by national origin, race, or ethnic group" as well as various other "documents or

2

communications . . . shared [with] the White House[.]" *Id*. at 7-8. It also intends to depose senior White House advisor Stephen Miller, the Senior Official Performing the Duties of Deputy Secretary of Homeland Security Kenneth Cuccinelli, and other high ranking government officials. *Id*. at 8. And although the White House is not a party to this case, ICIRR apparently seeks documents directly from the White House because it lists Mr. Miller, Mick Mulvaney, and other White House officials as proposed custodians for its document requests. *See* Dkt. No. 157-2, at 9.

Plaintiff's proposed "inquiry into 'executive motivation,' . . . represents 'a substantial intrusion' into the workings of another branch of Government [that] should normally be avoided." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2573 (2019). Moreover, "a district court should rarely, if ever, compel the attendance of a high-ranking official in a judicial proceeding." *In re USA*, 624 F.3d 1368, 1376 (11th Cir. 2010); *see also United States v. Morgan*, 313 U.S. 409, 421-22 (1941). Instead, as the Supreme Court and other courts have recognized, compelling the testimony of high-ranking government officials is justified only in "extraordinary instances." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977); *accord, e.g., Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013), cert. denied, 571 U.S. 1237 (2014); *In re United States*, 624 F.3d 1368, 1376 (11th Cir. 2010); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985); *In re USA*, 542 Fed. Appx. 944, 948 (Fed. Cir. 2013). That strict limitation on the compelled testimony of high-ranking officials is necessary because such orders raise significant "separation of powers concerns." *In re USA*, 624 F.3d at 1372; *see Arlington Heights*, 429 U.S. at 268 & n.18.[1]

---

[1] As a practical matter, requiring high-ranking officials to appear for depositions also threatens to "disrupt the functioning of the Executive Branch." *Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367, 385, 386 (2004). High-ranking government officials "have

Accordingly, Plaintiff's proposed discovery raises significant issues relating to the separation of powers and executive privilege, which deserve appropriate time for briefing and which cannot realistically be resolved under the extremely expedited timeframe contemplated by Plaintiff. "[B]alancing the need for information in a judicial proceeding and the Executive's Article II prerogatives" is a "difficult task," *Cheney*, 542 U.S. at 389, not one that is amenable to expedited treatment. Under these circumstances, the better approach is to certify the Court's decision on Defendants' motion to dismiss ICIRR's equal protection claim for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and stay discovery until the resolution of such interlocutory appeal proceedings, for the reasons explained in Defendants' Motion to Certify the Court's May 19 Opinion and Order for Interlocutory Appeal and to Stay Discovery, filed today. As discussed in that motion, an immediate appeal will materially advance the termination of this litigation, as resolution by the court of appeals may foreclose ICIRR's equal protection claims and could obviate both the possibility of discovery against the sitting President and other high-ranking officials, as well as the possibility of protracted litigation that might flow from such discovery.

## II.     Plaintiff Has Not Shown that Expedited Discovery is Appropriate

If the Court does permit discovery on Plaintiff's constitutional claim to go forward at this time, expedited discovery is nevertheless unjustified. Plaintiff's motion is premised entirely on its allegation that it faces irreparable harm that will be ameliorated by rushing through discovery on the equal protection claim. Plaintiff, however, chose not to move for a preliminary injunction on the equal protection claim and has never argued outside of this motion that any of the elements of

---

'greater duties and time constraints than other witnesses.'" *Lederman*, 731 F.3d at 203 (citation omitted). As a result, "[i]f courts did not limit the[] depositions [of high-ranking officials], such officials would spend 'an inordinate amount of time tending to pending litigation.'" *Id*. (citation omitted).

the preliminary injunction standard are met with regard to the constitutional claim. Any argument that Plaintiff now faces pressing harms related to this claim is undermined by the many months of delay. And any regrets Plaintiff may have about not seeking preliminary relief on the equal protection claim are no justification for imposing an unreasonable discovery schedule on Defendants. *See Fluke Elecs. Corp. v. CorDEX Instruments, Inc.*, 2013 U.S. Dist. LEXIS 19540, at *39-40 (W.D. Wash. Feb. 13, 2013) (denying motion for expedited discovery where the plaintiff had not sought preliminary relief after nearly two and a half months and where the motion "merely attempts to substitute expedited discovery for normal discovery"); *Orlando v. CFS Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 202864, at *7-8 (N.D. Ind. Oct. 10, 2013) (denying motion for expedited discovery where plaintiff waited "[o]ver two months after filing th[e] lawsuit" to "finally seek expedited discovery and file the motion for a preliminary injunction").

In arguing that it faces irreparable harm, ICIRR attempts to rely on harms allegedly suffered by others. First, it points to alleged harms suffered by co-plaintiff Cook County. *See* Mot. at 3 (quoting the Court's findings of irreparable harm for Cook County based on individuals disenrolling from public benefits). Of course, Cook County's alleged harms are irrelevant to whether *ICIRR* is entitled to expedited discovery. Second, ICIRR argues that violations of constitutional rights necessarily cause irreparable harm. *Id*. at 3-4. But the relevant rights that ICIRR invokes are the rights "to equal protection under the law of non-citizen immigrants of color and Latino immigrants from majority non-white countries." Compl. ¶ 185. ICIRR cannot rely on alleged harms suffered by immigrants to show that it will suffer irreparable harm.

The only concrete harm that ICIRR contends it personally has suffered is that it must "divert resources away from its existing programs to respond to the effects of the Final Rule." Mot. at 3. But by staying the preliminary injunction, the Supreme Court has necessarily concluded

that those harms are not sufficient to warrant preliminary injunctive relief, *see Wolf v. Cook County*, 140 S. Ct. 681 (2020), similarly undermining the basis for expedited discovery, *see Edgenet*, 259 F.R.D. at 386 (the *Notaro* test for expedited discovery "mirrors the standard required for obtaining a preliminary injunction"). In any event, Plaintiff has not provided evidence that any injury from the diversion of resources "looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Merrill Lynch*, 194 F.R.D. at 623. As discussed in Section III below, expediting discovery would place an enormous burden on Defendants to attempt to comply with an impossible schedule, at a time when resources are already stretched thin due to other litigation commitments and COVID-19-related logistical challenges. Plaintiff's desire to avoid a diversion of resources does not justify imposing such enormous burdens on the federal government, particularly in light of the weighty legal questions implicated by Plaintiff's proposed discovery and the reasons to doubt whether Plaintiff can move forward with its claims.

Furthermore, Plaintiff has not shown that its alleged harm from diverting resources would be resolved by expediting discovery related to the equal protection claim. Plaintiff appears to assume that discovery will yield favorable evidence of discrimination that Plaintiff can then use to obtain a preliminary or final injunction. Mot. at 4. But it is entirely speculative to presume that any such evidence exists. Plaintiff's speculation about the possibility that discovery may yield evidence to prove its claim is insufficient to justify expedition.

Plaintiff's arguments that the COVID-19 pandemic has increased the harms it faces from the operation of the Rule are similarly unavailing. Specifically, ICIRR argues that the Rule "deters immigrants and even immigrant families with U.S. citizen members from accessing publicly funded healthcare, thus undermining public health efforts that encourage testing and treatment for COVID-19." Mot. at 6. But Defendants have already addressed this exact concern. On March

6

13, 2020—the same day that President Trump declared that the COVID-19 outbreak constitutes a

national emergency—USCIS issued an alert to ensure that the Rule would not deter aliens from

seeking medical treatment or preventive services related to COVID-19. *See* USCIS, Public Charge

Alert, https://www.uscis.gov/green-card/green-card-processes-and-procedures/public-charge (last

visited June 14, 2020) ("Alert"). The Alert categorically states that "treatment or preventive

services" for COVID-19 "will not negatively affect any alien as part of a future public charge

analysis." *Id.* The alert further clarifies:

> To address the possibility that some aliens impacted by COVID-19 may be hesitant
> to seek necessary medical treatment or preventive services, USCIS will neither
> consider testing, treatment, nor preventative care (including vaccines, if a vaccine
> becomes available) related to COVID-19 as part of a public charge inadmissibility
> determination, nor as related to the public benefit condition applicable to certain
> nonimmigrants seeking an extension of stay or change of status, even if such
> treatment is provided or paid for by one or more public benefits, as defined in the
> rule (e.g. federally funded Medicaid).

*Id.* Thus, if an alien enrolls in Medicaid to receive COVID-19-related care, that enrollment will

not be a negative factor in a public charge inadmissibility determination, so long as the alien

disenrolls from Medicaid once he or she no longer needs COVID-19-related care, or provides

evidence of a request to disenroll. Plaintiff's allegation that it faces additional harms because its

clients are confused by this guidance relies on a misinterpretation of the guidance. Although the

Alert states that Medicaid enrollment is generally considered a factor in the public charge analysis,

it also clearly states that COVID-19-related medical services, "even if . . . provided or paid by"

public benefits covered by the Rule including Medicaid, will not be considered for the purpose of

the Rule.[2]  Outside of the litigation context, other entities have had no issue interpreting USCIS's

Alert.[3]

Finally, ICIRR has not shown a likelihood of success on its equal protection claim, for the

reasons discussed in Defendants' Motion to Certify the Court's May 19 Opinion and Order for

Interlocutory Appeal and to Stay Discovery.  Indeed, in discussing ICIRR's APA claims, the

Seventh Circuit stated recently that "the link between [ICIRR's claimed] injuries and the purpose

of the public-charge part of the statute is more attenuated, and thus it is harder to say that the injury

ICIRR has asserted meets the 'zone-of-interests' test." *Cook Cty. v. Wolf*, No. 19-3169, 2020 U.S.

App. LEXIS 18242, at *20-21 (7th Cir. June 10, 2020).  Accordingly, that statement just highlights

the fact that ICIRR is not a proper plaintiff to litigate the equal protection claim here, because the

alleged harms to ICIRR's finances and programing are too attenuated from the interests protected

by the equal protection clause.  And ICIRR lacks third-party standing to assert the rights of

immigrants themselves.  Moreover, the Supreme Court stayed a preliminary injunction issued

against the Rule by the Southern District of New York in which the plaintiffs alleged an equal

---

[2] ICIRR argues that due to "confusion around this USCIS guidance," ICIRR "was forced to divert additional resources to educating immigrants about the Final Rule," Mot. at 7, but the declaration it cites does not say that.  Also, ICIRR does not claim that it must divert further resources to address any remaining confusion, so any diversion of resources in the past is not relevant to whether expedited discovery should be ordered.

[3] For example, the District of Columbia government notes on its website that "for the purposes of COVID-19 testing, diagnosis, and treatment, *Medicaid enrollment will not be considered a negative factor in a public charge analysis*, according to USCIS guidance issued on March 19, 2020." *See* Government of the District of Columbia, Public Notice: Public Charge Rule FAQs with COVID-19 Information, (Mar. 26, 2020), https://coronavirus.dc.gov/release/public-notice-public-charge-rule-faqs-covid-19-information (emphasis added). The New York City Mayor's Office website similarly states that "USCIS posted an alert clarifying that seeking or using medical treatment or preventive healthcare services related to COVID-19 will NOT be considered under the public charge rule, *even if the services are Medicaid-funded.*" NYC Mayor's Office of Immigrant Affairs, Public Charge Rule, Mar. 16, 2020, https://www1.nyc.gov/site/immigrants/help/legal-services/public-charge.page (emphasis added).

protection claim similar to that alleged here.  *See Dep't of Homeland Sec. v. New York*, 140 S. Ct.

599 (2020).  In light of these circumstances, Plaintiff has not stated a reasonable case for expediting

discovery.

### III.    Plaintiff's Proposed Discovery Schedule is Unreasonable and Unrealistic

According to Plaintiff's proposed schedule, "Defendants' discovery responses and

production of responsive documents [would be] due 14 days following a ruling from this Court on

[Plaintiffs'] Motion."  Mot. at 10.  Then, in the following 21 days, Plaintiff would take at least six

depositions.  *See id*. at 8 (reserving the right to seek additional depositions); *id*. at 10.  The proposed

schedule is blatantly unreasonable and impossible to meet.  *See N. Atl. Operating Co. v. Evergreen*

*Distribs., LLC*, 293 F.R.D. 363, 368 (E.D.N.Y. 2013) ("The reasonableness analysis considers the

practical implications of the request — for example, can the requested materials physically be

gathered on the proposed timeline[.]").

First, Defendants cannot produce documents within 14 days, or anything close to that

timeframe.  In order to produce electronic documents, Defendants must first use computer

programs to perform electronic searches to gather potentially responsive documents.  *See*

Declaration of David J. Palmer ¶ 7; Declaration of Karrie E. Legagneux ¶ 4; Declaration of Stephen

P. Bell, Jr. ¶ 15.  That process can take weeks depending on the number of custodians and amount

of data required to be collected.  Palmer Decl. ¶ 12; Legagneux Decl. ¶ 19; Bell Decl. ¶ 13.  Once

the agencies collect documents, those documents are then transmitted to the Department of Justice

where they are processed and loaded to a document review platform.  Palmer Decl. ¶ 7; Legagneux

Decl. ¶ 4; Bell Decl. ¶ 15.[4]

---

[4] In addition to electronic documents, a separate process is required to search for responsive paper
documents, if any, that do not also exist in electronic form.  Due to the COVID-19 crisis and the
telework status of most agency personnel, Defendants cannot determine whether there are any

After the potentially responsive documents are loaded for review, each document must be individually reviewed by an attorney for responsiveness and to evaluate whether privileges justify withholding the document in full or in part. Palmer Decl. ¶¶ 7, 15; Legagneux Decl. ¶ 4; Bell Decl. ¶ 15. The attorney must apply redactions to any document withheld in part. Defendants estimate that Plaintiff's proposed search parameters would yield many thousands of documents to review. To determine that estimate, DOJ applied Plaintiff's proposed search terms to emails previously collected for one of Plaintiff's proposed custodians and that search yielded 1,879 documents, including families, for that one custodian. Declaration of Joshua M. Kolsky ¶ 3. That number actually *understates* the quantity of documents for that custodian because the emails DOJ currently has for that custodian covers a narrower time period than Plaintiff's requests. *Id*. ¶ 4. Expanding the relevant time period would further increase the number of documents to be reviewed. And, of course, the 1,879 figure is only for one custodian, whereas Plaintiff's requests cover numerous custodians. Indeed, in request number three, Plaintiff appears to request Defendants to search all agency emails *without any limitations on custodians*, ECF No. 157-2, at 9, which is massively overbroad and unduly burdensome, as it would apparently require the agencies to search the emails of every DHS and USCIS employee.

These facts belie Plaintiff's outlandish claim that "the burden on Defendants in responding to these requests is minimal." Mot. at 9. Plaintiff notes that "Defendants already have been ordered to produce a privilege log and thus to identify certain inter- and intra-agency communications related to the public charge rule" in related litigation pending in the Eastern District of Washington. *Id*. at 9-10. But the scope of documents covered by the privilege log

_____

paper documents that will need to be collected, as those documents are physically located in agency offices and are therefore currently inaccessible.

differs in material ways from the scope of documents Plaintiff appears to seek here.  In particular,

the privilege log covers privileged materials considered by the decisionmaker, as well as certain

interagency communications.  *See Washington v. DHS*, Case No. 19-cv-5210, ECF No. 219, at 4-

12 (E.D. Wash. May 13, 2020) (Pl's Ex. 3).  In contrast, Plaintiff's document requests seek

documents on various subjects regardless of whether they were considered by the decisionmaker.

ECF No. 157-2.  Also, while the privilege log applies only to documents "already in existence at

the time of the rulemaking process," Pl's Ex. 3 at 12, here Plaintiff seeks documents dating "to the

present."  *Id*. at 4.  Accordingly, the documents that Defendants have collected for the privilege

log are narrower in scope than the documents Plaintiff appears to seek here, meaning that

Defendants would have to run new searches for documents to comply with Plaintiff's requests as

written.  Palmer Decl. ¶ 13; Bell Decl. ¶ 14.  And Plaintiff's proposed custodian list is different

from the custodians utilized in connection with the privilege log, so additional custodians would

have to be searched.[5]

Document productions also will have to await the resolution of objections that Defendants

anticipate they would raise to the document requests.[6]  To begin with, Plaintiff's document

requests are confusing, poorly worded, and ungrammatical.  For instance, request number one

seeks:

> All DOCUMENTS, including but not limited to COMMUNICATIONS, within
> DHS or DHS's components related to the purpose, effect, or potential impact of the
> PUBLIC CHARGE RULE on individuals by national origin, race, or ethnic group,
> including but not limited to non-white individuals or individuals born in or

---

[5] Notably, the Court in *Washington* set a discovery period that extends until October 1, ***2021***.  *See*
*Washington v. DHS*, No. 19-5210, ECF No. 212, at 3 (E.D. Wash. May 4, 2020) (attached hereto
as Exhibit A).

[6] This section is not intended to identify every specific objection that Defendants may have to
Plaintiff's proposed discovery, and Defendants reserve the right to raise additional objections,
pursuant to the Federal Rules of Civil Procedure by the deadline for objecting to the requests.

descendent from Asia, Latin America, the Caribbean, Africa, and the Middle East. ECF No. 157-2.

It is unclear if Plaintiff is seeking, *inter alia*, documents "related to the purpose . . . of the PUBLIC CHARGE RULE" or documents "related to the purpose . . . of the PUBLIC CHARGE RULE on individuals by national origin, race or ethnic group[.]" If the latter, it is unclear what "the purpose . . . on individuals" may mean. Likewise, the phrase "effect, or potential impact . . . on individuals' *by national origin, race, or ethnic group*" is also confusing. Requests two and three use similar language to this and therefore suffer from the same deficiencies as request one. Because it is unclear what documents Plaintiffs are seeking, Defendants cannot identify and produce responsive documents, and would need to confer with Plaintiffs to ascertain Plaintiff's intended meaning.

Defendants also anticipate that they would object to the extent Plaintiff's document requests seek documents from federal agencies that are not parties to this litigation. For instance, Plaintiff has proposed a list of custodians that includes current or former White House personnel (Stephen Miller, Theodore Wold, Zina Bash, David Wetmore, and Mick Mulvaney), but the White House is not a party to this suit. Plaintiff must pursue appropriate processes to attempt to obtain documents from non-parties.[7] Defendants anticipate that they would object further to the requests on the grounds that they appear to seek information protected by privileges, including executive privilege, the deliberative process privilege, and the attorney-client privilege.

Plaintiff's schedule for depositions is also unreasonable, as it allows only 21 days after documents are produced for counsel to prepare six or more witnesses – none of whom have been deposed in any of the related public charge cases – for depositions and to attend those depositions.

---

[7] Likewise, certain of Plaintiff's proposed deponents are not employed by the defendant agencies.

That is patently insufficient time, particularly given the challenges associated with the COVID-19 crisis and the telework status of most agency employees and counsel.  Also, the schedule leaves insufficient time to litigate Defendants' objections to those depositions on the grounds discussed above.  In short, "[g]iven this extremely limited time frame and the extensive discovery requests asserted by the plaintiff," Plaintiff's request should be denied.  *Orlando*, 2013 U.S. Dist. LEXIS 202864, at *8-9.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's motion for expedited discovery.

Dated:  June 16, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

/s/ *Joshua M. Kolsky*
ERIC J. SOSKIN
Senior Trial Counsel
KERI L. BERMAN
KUNTAL V. CHOLERA
JOSHUA M. KOLSKY, DC Bar No. 993430
Trial Attorneys
U.S. Dept. of Justice, Civil Division,
Federal Programs Branch
1100 L Street, N.W., Rm. 12002
Washington, DC 20001
Phone: (202) 305-7664
Fax: (202) 616-8470
Email: joshua.kolsky@usdoj.gov

13

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2020, I electronically filed a copy of the foregoing.

Notice of this filing will be sent via email to all parties by operation of the Court's electronic

filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ Joshua M. Kolsky_____