# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

COOK COUNTY, ILLINOIS,

        et al.,

    Plaintiffs,

    vs.

CHAD F. WOLF, in his official capacity
as Acting Secretary of U.S. Department
of Homeland Security; U.S.
DEPARTMENT OF HOMELAND
SECURITY,

        et al.,

    Defendants.

Case No. 19-cv-6334

Judge Gary Feinerman

## PLAINTIFF ICIRR'S OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY THE COURT'S MAY 19 OPINION & ORDER FOR INTERLOCUTORY APPEAL AND TO STAY DISCOVERY

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................1

BACKGROUND ..................................................................................................2

ARGUMENT .......................................................................................................5

I.   The Questions Identified in DHS's Motion are Inappropriate for
Interlocutory Review. .................................................................................5

    A. There Is No Substantial Ground For Disagreement That
    *Arlington Heights* Governs ICIRR's Equal Protection Claim.............................6

    B. DHS's Decisionmaker Argument Lacks Legal Basis and
    Presents Questions of Fact........................................................................11

    C. The Zone-of-Interests Test is Inapplicable to ICIRR's   Equal
    Protection Claim and Its Application Here Presents a Mixed
    Question of Law and Fact...........................................................................14

II.  An Interlocutory Appeal Will Not Materially Advance This
Litigation....................................................................................................16

III. Regardless of Whether This Court Certifies an Appeal, Discovery
Should Proceed. .........................................................................................19

CONCLUSION..................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahrenholz v. Bd. of Trustees of Univ. of Illinois*,
219 F.3d 674 (7th Cir. 2000) ..................................................................... 5

*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*,
397 U.S. 150 (1970) ................................................................................ 15

*Blair v. Equifax Check Servs., Inc.*,
181 F.3d 832 (7th Cir. 1999) ................................................................... 16

*In re Brand Name Prescription Drugs Antitrust Litig.*,
878 F. Supp. 1078 (N.D. Ill. 1995) ........................................................... 6

*Casa de Md., Inc. v. Trump*,
355 F. Supp. 3d 307 (D. Md. 2018) ........................................................... 9

*Centro Presente v. United States Dep't of Homeland Sec.*,
332 F. Supp. 3d 393 (D. Mass. 2018) ........................................................ 9

*Cheney v. U.S. Dist. Court for Dist. of Columbia*,
542 U.S. 367 (2004) ........................................................................... 17, 18

*Clarke v. Sec. Indus. Ass'n*,
479 U.S. 388 (1987) ................................................................................ 15

*Cook Cty., Illinois v. Wolf*,
No. 19-3169, 2020 WL 3072046 (7th Cir. June 10, 2020) ...................... 14

*Department of Homeland Security, et al. v. Regents of the University of California*,
No. 18-587, 2020 WL 3271746 (U.S. June 18, 2020) ......................... 6, 10

*Groves v. United States*,
941 F.3d 315 (7th Cir. 2019) ..................................................................... 5

*Kwong Hai Chew v. Colding*,
344 U.S. 590 (1953) ................................................................................ 10

*Lexmark International, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ........................................................................... 14, 15

ii

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ................................................................................. 15

*NAACP v. U.S. Dep't of Homeland Sec.*,
364 F. Supp. 3d 568 (D. Md. 2019) ......................................................... 9

*Ramos v. Nielsen*,
321 F. Supp. 3d 1083 (N.D. Cal. 2018) ................................................... 9

*Saget v. Trump*,
375 F. Supp. 3d 280 (E.D.N.Y. 2019) ..................................................... 9

*Simmons v. Chicago Bd. of Educ.*,
289 F.3d 488 (7th Cir. 2002) ................................................................. 12

*Sterk v. Redbox Automated Retail, LLC*,
672 F.3d 535 (7th Cir. 2012) ................................................................... 5

*Swint v. Chambers Cty. Comm'n*,
514 U.S. 35 (1995) ................................................................................... 6

*In re Text Messaging Antitrust Litig.*,
630 F.3d 622 (7th Cir. 2010) ................................................................. 16

*Trump v. Hawaii*,
138 S. Ct. 2392 (2018) ....................................................................*passim*

*United States v. Brown*,
299 F. Supp. 3d 976 (N.D. Ill. 2018) ..................................................... 12

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
429 U.S. 252 (1977) .......................................................................*passim*

*Zadvydas v. Davis*,
533 U.S. 678 (2001) ......................................................................... 10, 11

**Statutes**

8 U.S.C. § 1101 ............................................................................................. 8

28 U.S.C. § 1292(b) ............................................................................. 5, 9, 16

Administrative Procedure Act ...................................................................... 7

Immigration and Nationality Act ................................................... 3, 4, 6, 7, 8

iii

National Banking Act ...................................................................................... 15

**Other Authorities**

84 Fed. Reg. 41,292.......................................................................................... 8

**INTRODUCTION**

ICIRR contends that the Department of Homeland Security's final rule *Inadmissibility on Public Charge Grounds*, 84 Fed. Reg. 41,292 (Aug. 14, 2019) (the "Final Rule" or the "Rule") was motivated by racial animus toward non-white immigrants. The Court found a "strong showing" that ICIRR is right—that the Rule was issued for the purpose of disadvantaging non-white immigrants—based on detailed facts and evidence specific to this case. Dkt. 150 at 25. All that remains now is to find out the truth.

Perhaps unsurprisingly, DHS wants to avoid that inquiry. DHS sought to dismiss the claim so no one ever would learn what motivated the Final Rule. The Court denied that motion. DHS sought to avoid discovery altogether. The Court rejected DHS's argument. DHS sought to delay discovery on the pretext that the federal government lacks the resources even to answer document requests and produce documents. The Court said no. Now, in a fourth bite at the apple, DHS seeks the extraordinary remedy of a district court's certification of issues for interlocutory review. There is no basis for interlocutory review.

DHS points to three legal questions that it argues warrant immediate appeal: (1) whether *Trump v. Hawaii* changes the standard of review for ICIRR's equal protection claim, a position rejected expressly by numerous courts and implicitly by the recent Supreme Court decision applying *Arlington Heights*, (2) whether the head of USCIS and the "architect" of the Rule are actually "decisionmakers," a factual question appropriate for discovery, not premature appellate review, and (3)

1

whether ICIRR is a proper party to bring this claim because it is supposedly not within the "zone of interests" of a statute and its follow-on regulation, when that analysis does not apply to claims under the Constitution. None of these reasons is appropriate for interlocutory review. DHS's motion should be denied in full.

## BACKGROUND

ICIRR asserts that the Final Rule violates the Equal Protection Clause of the Fifth Amendment to the United States Constitution because that Rule was motivated, at least in part, by racial animus against non-white immigrants. ICIRR's complaint alleged numerous publicly known facts supporting its claim, and it sought discovery to uncover further evidence of racial animus beyond what it already had detailed in its complaint. *See* Dkt. 111; Dkt. 118; Dkt. 119. DHS opposed discovery beyond the administrative record, and moved to dismiss ICIRR's equal protection claim. *See* Dkt. 124; Dkt. 133; Dkt. 144. The Court's May 19, 2020 Memorandum Opinion and Order denied DHS's motion to dismiss and granted ICIRR's motion for discovery. Dkt. 150 at 29.

First, the Court declined to dismiss the Complaint because, it concluded, "ICIRR expressly and plausibly alleges that DHS issued the Rule knowing and intending that it would have a disproportionate negative impact on nonwhite immigrants." *Id.* at 12. The Court pointed to ICIRR's allegations of, *inter alia*:

- The statement by then-Acting Director of U.S. Citizenship and Immigration Services ("USCIS") Kenneth Cuccinelli II, the day after the Rule was promulgated, "in response to the suggestion that the Rule undermined the values articulated in *The New Colossus*, the Emma Lazarus poem inscribed on the Statue of Liberty, that 'of course that poem was referring back to people coming from Europe.'" *Id.* at 7 (quoting Dkt. 1 ¶¶ 17–18, 174); and

2

- Statements by Stephen Miller, the President's principal immigration advisor, demonstrating white nationalist views and support for "a white nationalist perspective on immigration"—describing such views as "pro-American"—as well as correspondence revealing that Miller was "the 'architect of the Final Rule.'" *Id.* at 7–11 (quoting Dkt. 1 ¶ 180, Dkt. 111 at 5, Dkt. 133 at 48–49).

The Court concluded that, "[a]t this stage, ICIRR is entitled to the reasonable inference" that these statements of animus against nonwhite immigrants demonstrated that the Rule was motivated by racial animus. *Id.* at 12–13.

The Court rejected Defendants' argument that the Court should not consider statements by "non-DHS personnel" such as Miller in assessing whether ICIRR had stated a claim. *Id.* at 17–18.[1] This argument could not "be reconciled with ICIRR's allegations … that Miller was the Final Rule's 'architect'" or "with Miller's emails to [previous USCIS Director Francis] Cissna," which showed "who answered to whom." *Id.* at 17.

The Court also considered and rejected Defendants' argument that under *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), "the Rule is subject to only rational basis review—not strict scrutiny—because it concerns immigration." Dkt. 150 at 14. The Court explained that the statute in question in *Hawaii* was "Section 212(f) of the INA, which provides for expansive discretion to be exercised by the President," whereas this case concerns "an agency's interpretation of Section 212(a)(4), which is not entitled to the expansive discretion given [to] the President under Section

---

[1] As the Court noted, "[o]ne of the persons whose statements ICIRR cites, Cuccinelli, was the official who led the DHS component (USCIS) responsible for promulgating and implementing the Final Rule, so his statements are unquestionably pertinent in evaluating whether ICIRR has a plausible equal protection claim." *Id.* at 17.

212(f)." *Id.* Moreover, "the Court in *Hawaii* held that the 'sphere' in which executive power is shielded from 'searching inquiry' is 'the President['s] adopt[ion of] "a preventive measure ... in the context of international affairs and national security,"' not the *entire* realm of immigration law." *Id.* at 15 (quoting *Hawaii*, 138 S. Ct. at 2409) (alterations and emphasis in original). The Rule does not fall within that sphere. *Id.*

With respect to discovery, the Court held that ICIRR need not meet "the 'strong showing of bad faith or improper behavior' standard" to obtain Rule 26 discovery beyond the administrative record. *Id.* at 20. The Court concluded that "ICIRR satisfies the 'strong showing' standard in any event." *Id.* at 25. ICIRR made a strong showing *both* that DHS had submitted an incomplete administrative record, *id.* at 25–26, *and* "that DHS's stated reason for promulgating the Final Rule—protecting the fisc—obscures what ICIRR alleges is the real reason— disproportionately suppressing nonwhite immigration." *Id.* at 26. The Court thus ruled that ICIRR is "entitled to extra-record discovery on its equal protection claim," and it denied Defendants' request that discovery be stayed. *Id.* at 29.

ICIRR moved for expedited discovery, which the Court granted in part and denied in part. Dkt. 157; Dkt. 170. ICIRR submitted with its motion four targeted requests for production of documents, and identified several proposed custodians, including Miller, Cuccinelli, and Cissna. Dkt. 157 at 7–8; Dkt. 157-2. ICIRR also identified six individuals whom it proposed to depose, including Miller, Cuccinelli, and Cissna. *Id.* at 8. The Court granted the motion in part, concluding that

4

"expedited discovery is warranted and necessary" in light of "the continuing and substantial harms imposed by the Final Rule." Dkt. 170 at 1. The Court set a schedule for objections to the document requests and indicated that it could not "determine at this point whether ICIRR will be permitted to depose the individuals identified on its list of proposed deponents," stating that it would "address with the parties whether depositions may proceed" at "the appropriate juncture." *Id.* ¶¶ 3, 5.

On the same day that Defendants filed their opposition to expedited discovery, they filed the instant motion. Dkt. 163.

## ARGUMENT

Interlocutory appeals are disfavored and generally disallowed because they "interrupt litigation" and delay its conclusion. *Groves v. United States*, 941 F.3d 315, 319 (7th Cir. 2019); *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). Section 1292(b) provides a narrow exception, authorizing immediate review of an interlocutory order if there is a "controlling question of law as to which there is substantial ground for difference of opinion" and resolution of that question will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see also Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000). Defendants have not met this high standard.

## I.    The Questions Identified in DHS's Motion are Inappropriate for Interlocutory Review.

Defendants contend that three separate questions in this Court's May 19 Order warrant immediate review. But Defendants fail to show that any of the identified questions is "pivotal and debatable," such that a "substantial likelihood"

5

exists that this Court would be reversed on appeal, particularly at this stage. *See Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 46 (1995); *In re Brand Name Prescription Drugs Antitrust Litig.*, 878 F. Supp. 1078, 1081 (N.D. Ill. 1995).

### A. There Is No Substantial Ground For Disagreement That *Arlington Heights* Governs ICIRR's Equal Protection Claim.

Defendants first seek certification of the question of whether strict scrutiny applies to ICIRR's equal protection claim under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 268 (1977), or whether the rational basis standard applied to review the presidential proclamation at issue in *Trump v. Hawaii* applies here instead. Defendants' Memorandum of Law In Support of Its Motion ("Mot.") at 10. There is no substantial ground for disagreement with this Court's holding. To the contrary, every court to have considered the issue since *Hawaii*—including most recently the Supreme Court in *Department of Homeland Security, et al. v. Regents of the University of California*, No. 18-587, 2020 WL 3271746 (U.S. June 18, 2020)—has held that *Arlington Heights* governs equal protection challenges, like this one, to domestic agency actions concerning immigrants.

*Hawaii* turns explicitly on the scope of Presidential authority under *Section 212(f)*—a statutory provision that "exudes deference to the President in every clause"—to regulate the entry of aliens to the United States. 138 S. Ct. at 2408. The *Hawaii* case—and the standard of review it applied—examined "a matter within the core of executive responsibility," namely "a national security directive regulating the entry of aliens abroad." *Id.* at 2418. As this Court explained, the only "sphere" to

6

which *Hawaii* applies is "'the President's adoption of a preventive measure in the context of international affairs and national security,' not the *entire* realm of immigration law." Dkt. 150 at 15 (quoting *Hawaii*, 138 S. Ct. at 2409) (emphasis in original; alterations omitted). Indeed, the *Hawaii* Court repeatedly noted the targeted focus of its ruling: on Presidential regulation of entry of immigrants in the pursuit of *national security*. *See, e.g.*, 138 S. Ct. at 2419 ("[J]udicial inquiry into the national-security realm raises concerns for the separation of powers by intruding on the President's constitutional responsibilities in the area of foreign affairs.") (internal quotation marks and citations omitted); *id.* at 2419–20 ("Any rule of constitutional law that would inhibit the flexibility of the President to respond to changing world conditions should be adopted only with the greatest caution, and our inquiry into matters of entry and national security is highly constrained.") (internal quotation marks and citations omitted).

Here, Defendants contend that "[m]uch of the Supreme Court's reasoning in *Hawaii* applies with full force to this case," Mot. at 10, but that is wrong. As a threshold matter, this case does not concern a Presidential order restricting entry under Section 212(f), but instead DHS's interpretation of Section 212(a)(4), "which is not entitled to the expansive discretion given [to] the President under Section 212(f)." Dkt. 150 at 14. Concerns about "the flexibility of the President to respond to changing world conditions" plainly do not apply to constitutional review of agency action allegedly taken within the strictures of the Administrative Procedure Act.

7

More fundamentally, as Defendants well know, this case does not concern national security or world affairs. DHS has been consistent that its adoption of the Final Rule is justified "solely on economic grounds"—not national security. Dkt. 150 at 15 (collecting statements from the Rule and DHS's filings in this Court). Indeed, Defendants did not raise harms stemming from national security concerns based on physical entry of immigrants when this Rule was enjoined, nor could they. *See* Dkt. 92, Renaud Decl. ¶¶ 4–5. The Rule itself states that the redefinition of "public charge" "primarily impacts USCIS' adjudication of applications for adjustment of status"—that is, whether immigrants who are *already living in the United States* may change their immigration status—and not the national security or international affairs implications of determining which aliens may *enter* the United States in the first place.[2] 84 Fed. Reg. at 41,478.[3]

---

[2] Defendants attempt to introduce confusion through artful use of the term "admission." *See* Mot. at 10. Section 212(f) and *Hawaii* address "entry" under the INA, whereas section 212(a)(4) and this case address "admission." Although often treated as interchangeable by reviewing courts, *see Hawaii*, 138 S. Ct. at 2414 n.4, these are distinct terms of art. "Entry" is crossing a physical border with or without inspection; "admission" is a physical entry plus inspection. 8 U.S.C. § 1101 (defining "admission"); *cf.* § 1182 (distinguishing between "entry" at the border and seeking "admission" to the United States).

[3] As the Rule explains, *other agencies*—not subject to DHS's Final Rule—determine "whether a visa applicant is ineligible for a visa on public charge grounds" and whether immigrants are to be removed on public charge grounds. 84 Fed. Reg. at 41,294 n.3. DHS's Rule governs only adjustment of status proceedings and U.S. Customs and Border Protection ("CBP") (Mot. at 10) actions at ports of entry. *Id.*; *see also* 84 Fed. Reg. at 41,461 ("[T]he rule most directly impacts USCIS adjudication of applications for adjustment of status, as well as applications for extension of stay and change of status. … DHS defers to DOS on any information related to the application of the public charge inadmissibility determination as part of the immigrant and nonimmigrant visa process."). While CBP has various roles at the U.S. borders, the Final Rule contemplates CBP making public charge

8

No court has accepted Defendants' argument that the *Hawaii* standard of review applies to a case like this one, which concerns immigrants who already have entered the United States and about whom the Defendants have alleged no national security concerns. To the contrary, numerous courts have rejected Defendants' argument, just as this Court did. *See Saget v. Trump*, 375 F. Supp. 3d 280, 367 (E.D.N.Y. 2019) (*Hawaii* standard does not apply to executive action concerning foreign nationals "lawfully present in the United States"); *NAACP v. U.S. Dep't of Homeland Sec.*, 364 F. Supp. 3d 568, 576 (D. Md. 2019) ("the distinguishing factors [from *Hawaii*] include the absence of national security concerns and the presence of foreign nationals in the United States in this case"); *Casa de Md., Inc. v. Trump*, 355 F. Supp. 3d 307, 322–25 (D. Md. 2018) (same); *Centro Presente v. United States Dep't of Homeland Sec.*, 332 F. Supp. 3d 393, 411 (D. Mass. 2018) (same); *Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1127–31 (N.D. Cal. 2018) (same). And when confronted with an equal protection claim concerning immigrants already present in the United States, a plurality of the Supreme Court applied *Arlington Heights* without even mentioning *Hawaii*. *Regents of the Univ. of Cal.*, Slip Op. at 27. A question with such a uniform answer cannot satisfy § 1292(b).

The cases DHS cites are not to the contrary. *International Refugee Assistance Project v. Trump* concerns the same travel ban at issue in *Hawaii*, and the Fourth

---

determinations in very limited circumstances, primarily LPRs returning after more than 180 days abroad. *See id.* at 41,326, 41,327, 41,330, 41,331 (all discussing CBP conducing public charge determinations for LPRs). This is far from the specter of "unwanted" foreign nationals raised by Defendants. Mot. at 10-11.

9

Circuit unsurprisingly held that the *Hawaii* analysis controlled. 2020 WL 3039029,
at *1 (4th Cir. June 8, 2020). *Mayor and City of Baltimore v. Trump* concerns an
equal protection challenge to the Department of State's amendments to the
definition of public charge in its Foreign Affairs Manual ("FAM"). 429 F. Supp. 3d
128, 131–32 (D. Md. 2019). The FAM guidance—unlike the Rule at issue here—is
directed *exclusively* to immigrants residing *outside the United States*, *id.* at 133, and
the court concluded that "traditional equal protection analysis does not apply to
actions pertaining to the entry of foreign nationals." *Id.* at 141–42. But as
determined by the numerous district court cases cited above, as well as the plurality
opinion in *Regents of University of California*, traditional equal protection analysis
under *Arlington Heights* does apply when reviewing agency action affecting
immigrants in the United States. This is due in part to the fact that resident
noncitizens (like those subject to the Final Rule) have greater constitutional
protections than non-resident aliens seeking entry to the United States for the first
time (like those at issue in *Hawaii*). *See Zadvydas v. Davis*, 533 U.S. 678, 693–96
(2001) (holding that "once an alien enters the country, the legal circumstance
changes" for purposes of the Due Process Clause, and distinguishing cases involving
"the political branches' authority to control entry into the United States" and
"terrorism or other special circumstances where special arguments might be made
… for heightened deference to the judgments of the political branches with respect
to matters of national security"); *Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 n.5
(1953) ("[O]nce an alien lawfully enters and resides in this country he becomes

invested with the rights guaranteed by the Constitution to all people within our borders.").

Let us also not forget that this Court already has held, based on voluminous evidence, that a "strong showing" exists that racial animus actually motivated executive action. Whatever limits DHS seeks to impose, it cannot be that political decisionmakers are free to enact policies on the basis of racism. And that is exactly what would occur where, as here, there *already* is strong evidence that racist motivations lie behind government action. Courts still have a vital role to play as protectors of the Constitution. *See Zadvydas*, 533 U.S. at 695 (explaining that, although the executive branch has significant power in the realm of immigration, "that power is subject to important constitutional limitations").

## B. DHS's Decisionmaker Argument Lacks Legal Basis and Presents Questions of Fact.

DHS next asks this Court to certify for immediate appeal "the question whether ICIRR can rely on public statements from non-DHS officials" in order to prove discriminatory animus. Mot. at 12. Initially, this question does not warrant certification because it is not controlling. In denying Defendants' motion to dismiss, this Court relied on the statements of Cuccinelli, then-Acting Commissioner of USCIS and inarguably one of the "decisionmakers" even under Defendants' cramped view of the term. "[H]is statements are unquestionably pertinent in evaluating whether ICIRR has a plausible equal protection claim." Dkt. 150 at 17.

DHS appears to make two separate arguments: (1) as a matter of law, only the statements of DHS officials may be considered in assessing whether ICIRR has

11

stated an equal protection claim; and (2) as a factual matter, ICIRR's allegations with respect to the statements of Miller and Cuccinelli are insufficient to support their claim. Neither has merit.

With respect to the legal question, Defendants cite *no authority* holding that the government's organizational chart determines the limits of the Equal Protection Clause. The question under *Arlington Heights* is whether someone is part of "the decisionmaking body," *i.e.*, the group of individuals who made the challenged decision—and factual evidence, not formal agency lines, answers that question. 429 U.S. at 268. Defendants' own cases confirm this. For example, in *Clearwater v. Independent School District No. 166*, the Eighth Circuit made clear that what matters is whether animus is "[]related to the decisional process." 231 F.3d 1122, 1126 (8th Cir. 2000); *see also Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 492 (7th Cir. 2002) (plaintiff "offers nothing but speculation to connect [a nondecisionmaker's] views with the actions of the ultimate decisionmakers"); *United States v. Brown*, 299 F. Supp. 3d 976, 1015 (N.D. Ill. 2018) (animus of agent irrelevant because there was "no evidence to suggest … that he was involved in the initial decision"). In each case, it was the connection between the *factual evidence* of animus and the decision—not formal titles—that proved determinative. Here ICIRR already has demonstrated that the Miller and Cuccinelli were decisionmakers. *See* Dkt. 150 at 17–18.

As a factual matter, there is no merit—and certainly no certifiable issue—in Defendants' contention that the statements of racial animus supporting ICIRR's

12

claim "reflect only general views on immigration." Mot. at 13. As this Court noted, the statement of then USCIS Director Cuccinelli that *The New Colossus* was "of course" only referencing "people coming from Europe" came in response *to a direct question about the Final Rule* and its inconsistency with American values *the day after the Rule's issuance*. Dkt. 150 at 7. DHS will have ample opportunity to argue, as it does in its Motion, that Cuccinelli's remarks were simply "providing the relevant historical context." Mot. at 16 n.1. Such an argument on its face strains credulity, and in any event is wholly inappropriate for resolution either on a motion to dismiss or on certification under 1292(b). *See* Dkt. 150 at 13 ("At this stage, ICIRR is entitled to the reasonable inference that Cuccinelli's statements revealed (perhaps inadvertently) his understanding that the Rule was intended to favor white immigrants and disproportionately harm nonwhite immigrants."). And if DHS is confident of that view of Mr. Cuccinelli's statement, it should have no problem letting discovery proceed.

ICIRR also has offered concrete evidence linking Miller's views to USCIS decisionmaking, including emails showing that Miller pushed forcefully for the Final Rule's adoption. This Court concluded based on that evidence that "[t]here is no need to draw inferences in ICIRR's favor to deduce from those emails who answered to whom." Dkt. 150 at 17. Any dispute now is fundamentally about *how* to evaluate evidence, not *whether* such evidence may be considered at all.

13

C. **The Zone-of-Interests Test is Inapplicable to ICIRR's Equal Protection Claim and Its Application Here Presents a Mixed Question of Law and Fact.**

DHS's final try is to suggest that this Court should certify the question of whether ICIRR is a proper party to bring an equal protection claim. Having acknowledged in the June 19 telephonic hearing before this Court that its argument does not rest upon Article III standing, DHS instead suggests that ICIRR does not satisfy the zone-of-interests test for this claim. Mot. at 16–17. Again, Defendants present no certification-worthy question.

DHS relies heavily on the Seventh Circuit's decision affirming the preliminary injunction on the APA claim in this case. *See Cook Cty., Illinois v. Wolf*, No. 19-3169, 2020 WL 3072046 at *6 (7th Cir. June 10, 2020). There, the Seventh Circuit declined to decide whether ICIRR was in the "zone of interests" for purposes of the *APA* challenge. This non-decision on a separate claim hardly helps Defendants here.

Besides, the zone-of-interests test applies only to statutory claims, not constitutional claims like the equal protection claim asserted here. The Supreme Court made this clear in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), where it clarified its prior rulings related to standing. The Court explained that although it had previously described "zone of interests" as a matter of "prudential standing," this was a misnomer. *Id.* at 127. "Whether a plaintiff comes within 'the "zone of interests"' is an issue that requires us to determine, using traditional tools of *statutory* interpretation, whether a *legislatively*

14

*conferred* cause of action encompasses a particular plaintiff's claim." *Id.* (emphasis added) (citation omitted); *see also Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 400 n.16 (1987) ("[A] 'zone of interest' inquiry … is not a test of universal application."). *All* of the cases Defendants cite in their certification motion on this point involve statutory claims. Dkt. 163 at 17. *See Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153–55 (1970) (discussing zone-of-interests test in the context of Article III standing and applying test to the Bank Services Corporation Act of 1962); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990) (applying test to § 702 of the APA); *Clarke*, 479 U.S. at 399–401 (applying test to the National Banking Act). Indeed, the test's statutory emphasis is apparent from the very passages that Defendants quote, once Defendants' selective editing is removed. *See Lujan*, 497 U.S. at 883 ("[T]he plaintiff must establish that the injury [it] complains of ([its] aggrievement, or the adverse effect upon [it]) falls within the 'zone of interests' sought to be protected by the *statutory provision* whose violation forms the legal basis for [its] complaint.") emphasis added)); *Clarke*, 479 U.S. at 399 (explaining that a plaintiff falls outside the zone of interests when its "interests are … marginally related to or inconsistent with the purposes implicit in the *statute*" (emphasis added)).

ICIRR would satisfy the zone-of-interests test in any event. "The purpose of the equal protection clause" is to "secure every person … against intentional and arbitrary discrimination." Mot. at 18 (citing *Sunday Lake Iron Co. v. Wakefield Twp.*, 247 U.S. 350, 352 (1918)). ICIRR's direct harm—the diversion of resources to

15

mitigate the effects of DHS's racially motivated imposition of a barrier to
immigrants' access to benefits—implicates ICIRR's core mission and gives it a real
incentive "to police the interests" that the equal protection clause protects in this
context. And whether ICIRR can satisfy the zone of interests test in this case
requires no more than application of law to the particular facts of this case, making
§ 1292(b) certification inappropriate. *See In re Text Messaging Antitrust Litig.*, 630
F.3d 622, 625 (7th Cir. 2010) ("The main task of an appellate court, which is to
maintain the coherence, uniformity, and predictability of the law, is not engaged by
review of the application of a legal standard to a unique, nonrecurring set of
particular facts.").

## II.    An Interlocutory Appeal Will Not Materially Advance This Litigation.

Defendants argue that an immediate appeal could result in the dismissal of
the equal protection claim and thus eliminate discovery. Of course, *every* party that
unsuccessfully moves for dismissal could say the same, yet interlocutory appeals are
rarely permitted. *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 835 (7th Cir.
1999) ("Judges have been stingy in accepting interlocutory appeals by certification
under 28 U.S.C. § 1292(b), because that procedure interrupts the progress of a case
and prolongs its disposition. That bogey is a principal reason why interlocutory
appeals are so disfavored in the federal system.").

Defendants suggest that their interest in avoiding discovery is sufficient for
§ 1292(b) because an immediate appeal "offers an opportunity to avoid imminent
'constitutional confrontation,'" which they contend will be brought about by ICIRR's

discovery requests. Mot. at 7 (citing *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 389–90 (2004)). Defendants' concerns are hypothetical at best, and their reliance on *Cheney* fails for several reasons. First, *Cheney* involved an arguably "meritless claim[] against the Executive Branch" by plaintiffs seeking "civil damages" for an alleged statutory violation under the FACA for failure to disclose documents. *Id.* at 386. By contrast, ICIRR is pursuing a non-monetary claim—and already has made a "strong showing"—that the same officials from whom it seeks discovery implemented a policy to discriminate against nonwhites in violation of the Constitution. As *Cheney* recognized, the separation of powers calculus changes when the need for the relevant evidence has "constitutional dimensions" and withholding the evidence would hamper "a court's ability to fulfill its constitutional responsibility." *Id.* at 384–85.

Second, unlike the blunderbuss, "everything under the sky" discovery orders in *Cheney*, 542 U.S. at 387, ICIRR's limited discovery requests are tailored to evidence that speaks directly to discriminatory animus underpinning the Rule. The requests ask for communications and documents related to "the purpose, effect, or potential impact of the public charge rule *on individuals by national origin, race, or ethnic group*." Dkt. 157-2 (emphasis added). This gets to the heart of ICIRR's equal protection claim and its central issue: whether the Rule was motivated in part by discriminatory animus. That alone makes this case a far cry from the "unbounded in scope" discovery that was rejected by the Court in *Cheney*. 542 U.S. at 388.

17

Finally, ICIRR has not requested the collection of any records in the custody of the President or the Vice President (Dkt. 157-2 Appendix A)—another factor critical to the *Cheney* Court's decision. *See id.* at 382 (noting special circumstances of a case "involving the President or the Vice President"); *id.* at 384 (same). Instead, ICIRR is seeking discovery from the very same high-level executive officials who were directly involved—indeed, instrumental—in the development and issuance of the Final Rule, and who have already demonstrated racial animus in connection with the Rule.

This Court already has made clear that it will supervise discovery closely, crafting deadlines to ensure that objections are raised to the Court and that Defendants' stay motion is decided before any production is required. Dkt. 170. To the extent a "constitutional confrontation" arises down the road, Defendants can seek relief from this Court or a reviewing court then—with reference to a concrete dispute. Any generic references to separation of powers principles are premature.

In addition, Defendants ignore that this Court held that ICIRR was entitled to discovery not only because of its equal protection claim, but also because it "satisfies the 'strong showing' standard" for extra-record discovery under the APA. Dkt. 150 at 25. Even under ICIRR's APA claim, therefore, discovery may be appropriate to determine the true rationale for the Rule. Resolution of this lawsuit therefore is best advanced by *expediting* discovery, not slowing it down. Dkt. 170.

III.    **Regardless of Whether This Court Certifies an Appeal, Discovery Should Proceed.**

Even if this Court concludes that certification is appropriate, it should not stay discovery. This Court has held that, "[g]iven the continuing and substantial harms imposed by the Final Rule, Doc. 157-1, expedited discovery is warranted and necessary." Dkt. 170 at 1. In particular, ICIRR has demonstrated that the ongoing COVID-19 pandemic greatly exacerbates harm to immigrant communities affected by the Rule and chills them from utilizing public benefits just when they need those benefits most. Dkt. 157-1. Moreover, as explained above, the Court already has crafted a plan to oversee discovery, and if any concrete and important conflicts arise Defendants may pursue further review at that time.

## CONCLUSION

This Court should decline to Certify its May 19, 2020 Order for interlocutory review. ICIRR remains entitled to discovery, which should proceed without delay.

19

Dated: June 26, 2020                         Respectfully submitted,

*/s/* David A. Gordon
David A. Gordon
Tacy F. Flint
Marlow Svatek
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000 (Telephone)
(312) 853-7036 (Facsimile)
dgordon@sidley.com
tflint@sidley.com
msvatek@sidley.com

Yvette Ostolaza (*pro hac vice*)
Texas Bar No. 00784703
Robert S. Velevis (*pro hac vice*)
Texas Bar No. 24047032
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, Texas 75201
(214) 981-3300 (Telephone)
(214) 981-3400 (Facsimile)
Yvette.ostolaza@sidley.com
rvelevis@sidley.com

*/s/* Caroline Chapman
Caroline Chapman
Meghan P. Carter
LEGAL COUNCIL FOR HEALTH
JUSTICE
17 N. State, Suite 900
Chicago, IL 60602
Phone: (312) 605-1958
Fax: (312) 427-8419
cchapman@legalcouncil.org
mcarter@legalcouncil.org

*/s/* Katherine E. Walz
Katherine E. Walz
Andrea Kovach
Militza M. Pagan

SHRIVER CENTER ON POVERTY
LAW
67 E. Madison, Suite 2000
Chicago, IL 60603
Phone: (312) 368-2679
Fax: (312) 263-3846
katewalz@povertylaw.org
andreakovach@povertylaw.org
militzapagan@povertylaw.org

*Counsel for Illinois Coalition For
Immigrant and Refugee Rights, Inc.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on June 26, 2020, she caused the attached **Plaintiff ICIRR's Opposition to Defendants' Motion to Certify the Court's May 19 Opinion & Order for Interlocutory Appeal and to Stay Discovery** to be served via the Court's ECF system and by email upon:

Keri L. Berman (Keri.L.Berman@usdoj.gov)

Kuntal Cholera (Kuntal.Cholera@usdoj.gov)

Joshua Kolsky (Joshua.kolsky@usdoj.gov)

Eric Soskin (Eric.Soskin@usdoj.gov)

Tom Walsh (thomas.walsh2@usdoj.gov)

/s/ Marlow Svatek