UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COOK COUNTY, ILLINOIS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CHAD F. WOLF, in his official capacity as Acting Secretary of U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY, et al., <br><br> Defendants. | Case No. 19-cv-6334 <br><br> Judge Gary Feinerman |

**ICIRR'S SUPPLEMENTAL BRIEF REGARDING REMEDY**

The Final Rule inflicts concrete harm on Plaintiffs—and immigrants—every day it remains in effect. The Rule chills immigrants' access to critical basic services, including healthcare during a pandemic that disproportionately affects immigrant communities. Given that reality, Plaintiffs' foremost goal is immediate, tangible relief from the Final Rule's effect. As DHS has conceded, the Seventh Circuit's decision in this case, 962 F.3d 208 (7th Cir. 2020), necessarily implies that Plaintiffs are entitled to summary judgment on Counts I, II, and III of their Complaint. And vacatur of the Rule necessarily follows.

1

In addition to vacatur under the APA, however, ICIRR seeks additional and distinct relief based on its separate claim under the Equal Protection Clause. If, as ICIRR expects, it ultimately can secure a decision that the process leading to the Final Rule was fatally tainted by racial animus, ICIRR would expect to seek, and obtain, permanent injunctive relief that goes beyond invalidating this specific iteration of the Rule. Specifically, ICIRR seeks permanent injunctive relief tailored to remedying the equal protection violation; not just addressing the Rule but also its poisoned roots. Compl., Dkt. 1 at 55-56.

Plaintiffs' foremost goal in this litigation is immediate relief from the Rule's harm. Accordingly, ICIRR seeks a judgment under Federal Rule of Civil Procedure 54(b), so as to give the vacatur of the Rule immediate enforceable effect, even as ICIRR continues to pursue equal protection discovery and the additional relief to which it is entitled on that separate legal claim. This is important for the additional reason that Defendants may seek a stay of any judgment, which would have the effect of continuing the harms discussed above (and at length in prior proceedings in this case).[1]

## I.    ICIRR IS ENTITLED TO A RULE 54(B) JUDGMENT.

If Plaintiffs' motion for summary judgment is granted, ICIRR seeks a judgment pursuant to Fed. R. Civ. P. 54(b), which this Court has the power to enter.

---

[1] If this Court grants summary judgment but declines to enter a Rule 54(b) judgment, ICIRR respectfully reserves the right to seek a voluntarily dismissal of its equal protection claim without prejudice and with leave to reinstate before this Court to permit the entry of a Rule 58 judgment and obtain immediate relief.

Whether a Rule 54(b) judgment is appropriate involves a two-step analysis. First, courts ensure that the judgment is "truly a final judgment" and involves claims that "are based on 'entirely different legal entitlements yielding separate recoveries'" as compared to the claims remaining in the case. *Peerless Network, Inc. v. MCI Commc'ns Servs., Inc.*, 917 F.3d 538, 543 (7th Cir. 2019) ("When it comes to determining if a judgment is truly final, we consider whether there is too much factual overlap with claims remaining in the district court."). Second, a court must find that there is "no just reason to delay the appeal of the claim that was finally decided." *Id*. ICIRR's summary judgment on its APA claims satisfies both parts of this test.

### A. Judgment Would Be Truly Final Because ICIRR's Remaining Claim Contains the Possibility of Meaningful and Distinct Relief.

Summary judgment on Plaintiffs' APA claims would represent a truly final judgment that is both legally and factually distinct from ICIRR's remaining equal protection claim. The APA claims for which Plaintiffs sought summary judgment are based on statutory causes of action totally distinct from the constitutional cause of action that underlies ICIRR's equal protection claim. Moreover, Plaintiffs' APA claims deal with DHS's legal authority under the immigration statutes; by contrast, the Equal Protection Clause claim addresses the factual motivations of the government decisionmakers responsible for the Final Rule. And, importantly, the one area in which there is factual overlap between ICIRR's Equal Protection Clause claim and the APA claims—namely, whether the stated reasons for the Final Rule

3

were pretextual—is not before the Court on Plaintiffs' motion for summary judgment. Plaintiffs specifically noted that, "Discovery is ongoing with respect to Plaintiffs' pretext claim under Count III, and Plaintiffs do not presently seek summary judgment as to pretext." Dkt. 201 at 7 n.6. Instead, the only issue before the Court on Plaintiffs' summary judgment motion is the purely legal question of whether the Final Rule exceeds DHS's statutory authority and is contrary to law. This Court can resolve that question without implicating the factual issues at the heart of the remaining equal protection claim. *See also* Dkt. 201 at 6–7 (explaining that Plaintiffs' summary judgment motion involves separate legal questions with no need for additional discovery).

The APA and equal protection claims are also not merely "different legal theories aimed at the same recovery." *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 464 (7th Cir. 2008). ICIRR's equal protection claim will result in meaningful additional relief even after vacatur is entered. Specifically, ICIRR plans to seek a declaratory judgment that the Final Rule was motivated by racial animus, as well as a permanent injunction against enforcement of any future public charge rule resting on similar motivations. Compl., Dkt. 1 at 56. This is separate relief with a separate potential mechanism of enforcement. And, importantly, that relief would go beyond invalidating this specific iteration of the Rule and would prevent DHS from instituting any form of public charge rule based on the same underlying discriminatory animus. Only through the equal protection claim can ICIRR seek an order requiring Defendants to take active steps to remedy

4

the continuing effects of the discrimination borne out of the invalidated Rule. Otherwise, with vacatur alone, ICIRR's injury will not have been fully remedied and the discrimination will likely continue. This is an important distinction—the difference between immediate relief under the APA on the basis of an unlawful rule and future relief under the Equal Protection Clause aimed to prevent subsequent discriminatory action leading to future harm.

The Supreme Court's decision in *Monsanto Co. v. Geertson Seed Farms* makes clear that, in some cases, an injunction may have a "meaningful practical effect independent of [] vacatur." *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010) (holding that petitioners had standing to challenge an injunction even where a district court had vacated the underlying agency decision). Other federal courts also have explained that a permanent injunction provides potentially broader relief than vacatur. *See, e.g.*, *Nat'l Ski Areas Ass'n, Inc. v. U.S. Forest Serv.*, 910 F. Supp. 2d 1269, 1287–91 (D. Colo. 2012) (ordering injunctive relief in addition to vacatur "to ensure good faith between the parties while the 2012 Directive runs through [the] APA procedural process on remand"); *O.A. v. Trump*, 404 F. Supp. 3d 109, 154 (D.D.C. 2019) (analyzing whether injunctive relief was appropriate in addition to vacatur).

In last year's litigation concerning the addition of a citizenship question to the Census, for example, the District Court for the Southern District of New York issued a permanent injunction in addition to granting vacatur and explained "that granting an injunction would have two practical effects beyond mere vacatur of

5

Secretary Ross's March 26, 2018 memorandum." *New York v. United States Dep't of Commerce*, 351 F. Supp. 3d 502, 676–77 (S.D.N.Y.), *aff'd in part, rev'd in part and remanded sub nom. Dep't of Commerce v. New York*, 139 S. Ct. 2551, 204 L. Ed. 2d 978 (2019). First, the court reasoned that an injunction would prevent the agency from promulgating a similar rule without curing the fundamental defects that were the basis for the initial injunction. *Id.* In other words, vacatur addresses only the specific agency action at issue, while an injunction can more broadly cover any agency action that rests on the same impermissible animus. And second, the district court reasoned that an injunction provided a more immediate mechanism for enforcement if the government took any action inconsistent with the court's order. Given the urgency of the Census litigation, the court explained that this "ability to seek immediate recourse" through an injunction was "critical." *Id.*

The same factors support entry of a permanent injunction on the equal protection claim here, because it similarly would provide meaningfully different relief, and on a different legal and factual basis. First, if ICIRR can demonstrate that the Final Rule is motivated by animus toward non-white immigrants, then it will be entitled to relief that not only invalidates this Rule, but also that permanently enjoins DHS from promulgating any similar rule that is still premised on—and tainted by—the same underlying impermissible motivation. Indeed, there is ample case law in the discrimination context holding that courts have authority to grant injunctive relief to combat the lingering effects of discrimination even after a particular discriminatory act has ceased. *See, e.g.*, *United States v. Gregory*, 871

6

F.2d 1239, 1246 (4th Cir. 1989) (holding that, in the Title VII context, "[d]istrict courts clearly have the authority and should exercise the power to grant injunctive relief even after apparent discontinuance of unlawful practices. That is especially true where, as in cases such as the present one, the record does not demonstrate a total cessation of the unlawful practices."); *United States v. Virginia,* 22 Fair Empl. Prac. Cas. (BNA) 936, 937 (E.D. Va. 1978) (injunction would provide publicity aimed at eliminating the "lingering vestiges of discrimination"); *Gautreaux v. Romney*, 448 F.2d 731, 736 (7th Cir. 1971) (holding that housing discrimination case was not moot, despite issuance of injunctive relief in companion case, in part because "[t]he entry of a declaratory judgment here would have significant consequences in determining the extent of any 'further relief' deemed necessary, in the event that practices found to be discriminatory were resumed").[2]

Second, the prospect of a future permanent injunction based on the equal protection violation also has immense practical significance here beyond mere vacatur because Defendants maintain that the Rule is lawful under the APA and plan to seek an immediate stay of the vacatur so they can continue to enforce the Rule. *Cf. Franciscan All., Inc. v. Azar,* 414 F. Supp. 3d 928, 944–46 (N.D. Tex. 2019) (suggesting that injunctive relief would have a meaningful practical effect independent of vacatur if there was an "indication that, once the Rule is vacated,

---

[2] In addition, as in *Department of Commerce*, a permanent injunction would provide ICIRR with an important enforcement mechanism to remedy the immediate and tangible harm that the Rule imposes on the health of immigrant communities, especially during a pandemic.

Defendants [would] defy the Court's order and attempt to apply the Rule against Plaintiffs or similarly situated non-parties"). A worst case scenario for those harmed by the Final Rule would be (1) this Court ordering the rule vacated; but (2) the practical impact of that order lasting only a few weeks; yet (3) the issuance of the order being used to foreclose discovery into whether the Rule was unlawful for the separate and additional reason that it was the product of racial discrimination for months if not years, which would delay an entirely separate avenue toward protecting Plaintiffs' and immigrants' rights. This Court can issue a Rule 54(b) judgment, and it should do so.

      **B.    There is No Just Reason to Delay Final Judgment as to the APA Claims.**

There is also no just reason to delay the appeal of Plaintiffs' APA claims here. As was made clear by the Seventh Circuit's decision in reviewing the preliminary injunction, the legal issues underlying those claims are ripe for adjudication and can be resolved without further factual development at this time. The goal of this aspect of the Rule 54(b) analysis "is to prevent 'piece-meal appeals' involving the same facts." *Peerless*, 917 F.3d at 543 (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980)). That concern is not present here because, as explained above, Plaintiffs seek summary judgment only as to their legal theories under the APA. The facts related to DHS's discriminatory motivations would not be relevant to this Court's entry of summary judgment and would not be before any court on appeal from that judgment.

## II. ICIRR'S EQUAL PROTECTION CLAIM SHOULD PROCEED

For the same reasons, ICIRR's equal protection claim should proceed—and would not be rendered moot—after entry of a Rule 54(b) judgment as to the APA claims. A claim is rendered moot only if "there is *no possible relief* which the court could order that would benefit the party seeking it." *Maher v. F.D.I.C.*, 441 F.3d 522, 525 (7th Cir. 2006) (quoting *In re Envirodyne Indus.*, 29 F.3d 301, 303 (7th Cir.1994) (emphasis added)). The possibility that Plaintiffs could obtain additional and distinct relief under the Equal Protection Clause is enough to give plaintiffs a real stake in the outcome of that claim and to avoid mootness once vacatur is ordered. *See Powell v. McCormack*, 395 U.S. 486, 499 (1969) (permitting a claim of "unconstitutional deprivation" to proceed as an alternative remedy despite a moot primary claim). As explained above, even if this version of the Rule is vacated, ICIRR has not been made fully whole unless and until it receives the separate and additional relief it is entitled to under the Equal Protection Clause; relief that is specifically targeted at remedying the discriminatory animus that motivated the Rule. *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16 (1971) ("As with any equity case, the nature of the violation determines the scope of the remedy."). In order to make that showing, ICIRR must be permitted to continue to develop a robust factual record through the expedited discovery to which this Court already has ruled it is entitled. *See generally* Dkt. 170. Even if judgment is entered on Plaintiffs' APA claim, the "just, speedy, and inexpensive" resolution of this action requires that ICIRR's equal protection claim proceed to continue to root out racial

9

animus and white nationalism at play behind the Rule and that it be remedied, not merely erased. Fed. R. Civ. P. 1.

Dated:  October 16, 2020   Respectfully submitted,

/s/ David A. Gordon
David A. Gordon
Tacy F. Flint
Marlow Svatek
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000 (Telephone)
(312) 853-7036 (Facsimile)
dgordon@sidley.com
tflint@sidley.com
msvatek@sidley.com

Yvette Ostolaza (*pro hac vice*)
Texas Bar No. 00784703
Robert S. Velevis (*pro hac vice*)
Texas Bar No. 24047032
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, Texas 75201
(214) 981-3300 (Telephone)
(214) 981-3400 (Facsimile)
Yvette.ostolaza@sidley.com
rvelevis@sidley.com

/s/ Caroline Chapman
Caroline Chapman
Meghan P. Carter
LEGAL COUNCIL FOR HEALTH
JUSTICE
17 N. State, Suite 900
Chicago, IL 60602
Phone: (312) 605-1958
Fax: (312) 427-8419
cchapman@legalcouncil.org
mcarter@legalcouncil.org

/s/ Militza M. Pagán
Andrea Kovach
Militza M. Pagán
Nolan Downey
SHRIVER CENTER ON POVERTY

LAW
67 E. Madison, Suite 2000
Chicago, IL 60603
Phone: (312) 690-5907
Fax: (312) 263-3846
andreakovach@povertylaw.org
militzapagan@povertylaw.org
nolandowney@povertylaw.org

/s/Katherine E. Walz
Katherine E. Walz
NATIONAL HOUSING LAW PROJECT
1663 Mission Street, Suite 460
San Francisco, CA 94103
Phone: (415) 546-7000
Fax: (415) 432-5701
kwalz@nhlp.org

*Counsel for Illinois Coalition For Immigrant and Refugee Rights, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on October 16, 2020, he caused the foregoing ICIRR's Supplemental Brief Regarding Remedy to be served via the Court's ECF system upon all counsel of record.

/s/ David A. Gordon