## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Cook County, Illinois; Illinois Coalition for Immigrant and Refugee Rights, Inc.,**<br><br>Plaintiffs,<br><br>v.<br><br>**Chad F. Wolf, in his official capacity as Acting Secretary of U.S. Department of Homeland Security; et al.**<br><br>Defendants. | Case No. 19-cv-6334 |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' REQUEST TO STAY ALL PROCEEDINGS OVER ICIRR'S EQUAL PROTECTION CLAIM

Plaintiffs made a strategic decision to promptly move for summary judgment on their Administrative Procedure Act ("APA") claims in order to secure quicker relief—relief which, if granted, eliminates the need for the Court to resolve (and for the parties to continue litigating) the equal protection claim. Thus, consistent with the principle of Constitutional avoidance, the Court should stay all further proceedings on the equal protection claim, and should abstain from resolving the equal protection claim altogether if the Court grants Plaintiffs' motion for summary judgment ("MSJ").

Plaintiffs have argued, and Defendants do not dispute, that the Court may grant Plaintiffs' pending MSJ in light of the Seventh Circuit's decision affirming the Court's preliminary injunction order. Both Plaintiffs seek final judgment on their APA claims and a full vacatur of the Department

of Homeland Security ("DHS") Rule *Inadmissibility on Public Charge Grounds* ("Final Rule").[1] Nevertheless, one Plaintiff—Illinois Coalition For Immigrant And Refugee Rights, Inc. ("ICIRR")—seeks to continue litigating the equal protection claim, *even if* the Rule is vacated, arguing that it may still pursue a separate injunction prohibiting a potential, *future* public charge rule that may raise similar equal protection concerns. But ICIRR, of course, never specifically requested this relief in its Complaint, and regardless, it certainly does not have standing to challenge speculative harms associated with a potential, future DHS rule. Further, in *Monsanto Co. v. Geertson Seed Farms*,[2] the Supreme Court found that although a plaintiff may seek vacatur of the specific agency policy at issue, it is not entitled to injunctive relief against potential, future policies that may resemble the vacated policy.

Furthermore, ICIRR also explains that it wants to proceed with its equal protection claim since Defendants may ultimately secure a stay of an injunction entered pursuant to the APA claims. But this argument—that the parties should litigate a Constitutional claim because it may *potentially* be relevant if Defendants secure a stay—is inconsistent with the principle of Constitutional avoidance. Additionally, ICIRR's concern—that Defendants may secure a stay after the Court suspends litigation on the equal protection claim—arises from ICIRR's own strategic decisions. ICIRR could have waited for the expedited discovery process to terminate, and then moved for summary judgment on the equal protection claim first (or on all claims at once). ICIRR instead chose to move for summary (and final) judgment on the APA claims now, and seek relief sufficient to address all of its alleged, cognizable harms. ICIRR must now accept the consequences of that

---

[1] 84 Fed. Reg. 41292.
[2] 561 U.S. 139 (2010).

decision. Accordingly, the Court should not allow ICIRR to proceed with its equal protection claim in light of Plaintiffs' pending MSJ.

**ARGUMENT**

Although the parties had not concluded the expedited discovery process over Plaintiff ICIRR's equal protection claim, Plaintiffs moved for summary judgment on their APA claims on August 31, 2020, asking the Court to vacate the Department of Homeland Security ("DHS") Public Charge Rule in full. *See* ECF No. 201, at 28. Both Plaintiffs have since clarified that they seek a prompt, final judgment on their APA claims. *See* ECF Nos. 217 & 218. Importantly, Plaintiffs argue that the Seventh Circuit's decision affirming the Court's preliminary injunction order requires the Court to grant their summary judgment motion. *See* ECF No. 201, at 1. Defendants, in their response brief, did not dispute this point. *See* ECF No. 209, at 1. Accordingly, the Court is now presented with a ripe motion upon which it may resolve this case on statutory grounds, and issue that may address any cognizable harms alleged by both Plaintiffs. The Court need not, and should not, allow further litigation on the equal protection claim.

"If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944). Thus, courts "will not decide a constitutional question if there is some other ground upon which to dispose of the case," especially if the other ground "afford[s] [a plaintiff] all the relief it seeks." *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009); *see also Califano v. Yamasaki*, 442 U.S. 682, 692 (1979) ("A court presented with both statutory and constitutional grounds to support the relief requested usually should pass on the statutory claim before considering the constitutional question.").

The Supreme Court has specifically found that a federal court should not resolve an *equal protection claim* if it may decide the case on statutory grounds. In *Youakim v. Miller*, the plaintiffs challenged an Illinois statutory scheme under which foster parents received greater benefits if they were *not* related to their foster children. *See* 425 U.S. 231, 233 (1976). The plaintiffs—foster parents who *were* related to their foster children—claimed that this statutory scheme violated the equal protection clause and otherwise conflicted with the Social Security Act. *See id.* at 233. The district court initially ruled on the equal protection claim, without resolving the statutory claim. *See id.* On appeal, however, the Supreme Court emphasized its "usual practice of avoiding decisions on constitutional matters if a case may be resolved on other grounds," and "[v]acat[ed] the judgment and remand[ed] the case" so the district court could "first . . . decide the statutory issue" since, if the plaintiffs "prevail[ed] on that question, it w[ould] be unnecessary for either the District Court or [the Supreme Court] to reach the equal protection issue at all." *Id.* at 236.

Here, similarly, Plaintiffs challenge the Rule on both statutory and equal protection grounds. Furthermore, Plaintiffs have already moved for summary judgment on the APA claims, asking the Court to "vacate" the Rule in its entirety. *See* MSJ, at 28-29. If the Court agrees with Plaintiffs, and agrees that it may vacate the Rule in full, such vacatur would address all of their alleged current or imminent harms; vacatur on equal-protection grounds could not provide any additional relief. Thus, if the Court grants Plaintiffs' summary judgment motion, it need not and should not resolve the equal protection claim. Accordingly, the Court should now stay all further proceedings on the equal protection claim because Defendants should not be required to invest further resources litigating a claim that the Court may never resolve. *See Landis v. North American Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort

for itself, for counsel, and for litigants."). A stay of all further proceedings over the equal protection claim is especially warranted here since the parties are poised to litigate a number of discovery disputes (*e.g.*, disputes over privilege and depositions), which could consume significant resources of both the Court and the parties.

ICIRR's arguments for why the Court should nonetheless allow ICIRR to continue pursuing its equal protection claim lack merit. ICIRR argues, for example, that through its equal protection claim, it seeks relief beyond just vacatur of the Rule. Specifically, ICIRR asserts that it seeks a "permanent injunction against enforcement of any future public charge rule resting on similar motivations." ECF No. 218, at 4. This argument fails for a number of reasons. First, ICIRR does not request this relief in its Complaint. The Complaint notes that, "[w]ith respect to Count IV [the equal protection claim], Plaintiff [ICIRR] prays that this Court . . . [d]eclare *the Final Rule* unlawful and invalid," "[e]nter a permanent injunction . . . enjoining Defendants . . . from implementing or enforcing *the Final Rule* in the State of Illinois," and "[s]tay the implementation or enforcement of *the Final Rule* in the State of Illinois."[3] Compl., at 55-56. ICIRR did not ask for an injunction against potential, future DHS policies, nor does it appear to allege that DHS will institute a new public charge rule if the Final Rule is vacated. ICIRR thus cannot seek this broader relief now. *See*, *e.g.*, *Protestant Mem'l Med. Ctr., Inc. v. Maram*, 471 F.3d 724, 730 (7th Cir. 2006) (plaintiff's "complaint sought only [equitable] relief" and so could not "seek monetary relief" which was never "before the district court"); *Juno Lighting, Inc. v. Ruud Lighting, Inc.*, No. 94 C

---

[3] The Complaint also seeks attorneys' fees and "such other relief as the Court deems just and equitable." The latter is too imprecise to justify ICIRR's new request for an injunction against potential, future DHS policies. *Cf. Ryan v. Mooney*, 499 F. Supp. 1112, 1113 (N.D. Ill. 1980) ("Although Dr. Ryan does ask for 'such other additional relief as seems just and equitable,' the Complaint's only specific prayer is for injunctive relief; no prayer for liquidated damages is included.").

4763, 1994 WL 684992, at *1 (N.D. Ill. Dec. 6, 1994) (defendant "moved to strike [a] portion of the decree" since it went "beyond the scope of relief prayed for in the complaint," and "the district court agreed and struck the challenged provision, finding that the complaint did not support the relief granted").

Second, ICIRR has not established standing to challenge a hypothetical, future DHS public charge rule. When a plaintiff seeks prospective relief, the "threatened injury must be certainly impending to constitute injury in fact;" "[a]llegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *cf. City of Los Angeles v. Lyons*, 461 U.S. 95, 105-10 (1983) (holding that plaintiff had no standing to seek injunction against allegedly unconstitutional police practices absent a non-speculative showing that such allegedly unconstitutional practices would be applied to him again in the future). Here, there is no allegation that DHS would certainly or imminently institute a new rule concerning the public charge ground of inadmissibility if the Final Rule is vacated, nor is there any allegation concerning the substance of this hypothetical future rule, or the process through which it would be implemented. Thus, ICIRR cannot establish standing for injunctive relief against this hypothetical, future DHS rule.

Third, even if ICIRR could overcome the first two hurdles, it cannot establish that it will meet the requirements for a permanent injunction in light of the Supreme Court's decision in *Monsanto Co. v. Geertson Seed Farms*., 561 U.S. 139 (2010). There, the plaintiffs challenged a decision by the Animal and Plant Health Inspection Service ("APHIS") to grant a petition by Monsanto to completely "deregulate," and thus allow entities to freely plant, "a variety of genetically engineered alfalfa." *Id.* at 144-47. The district court agreed that APHIS's approval of Monsanto's petition was unlawful and thus "vacated the agency's decision completely deregulating RRA," and also "enjoined APHIS from" taking any other, future action "deregulating

[the alfalfa crop at issue], in whole or in part," unless certain conditions were met. *Id.* at 156. The Supreme Court found that the plaintiffs did not meet the requirements for a permanent injunction against a potential, future deregulation determination. The court emphasized that the plaintiffs were challenging a specific "APHIS[] decision to completely deregulate" the relevant alfalfa crop, and "APHIS had not yet exercised its authority to" issue any other decision "deregulat[ing]" the crop, and so the injunction was "premature;" indeed, "APHIS might ultimately choose not to" take any other action "deregulat[ing]" the alfalfa crop at issue. *Id.* at 160, 164.

The Court further noted that "if and when APHIS pursues" any other "deregulation" of the crop, the plaintiffs "may file a new suit challenging such action and seeking appropriate preliminary relief," and so "a permanent injunction is not now needed to guard against any present or imminent risk of likely irreparable harm." *Id.* at 162. The Court therefore found the district court's injunction improper. *See id.* The same considerations apply here. ICIRR is challenging a specific DHS policy: the Final Rule. Although ICIRR may seek vacatur of the Final Rule, any request for an injunction against some other hypothetical, future DHS rule concerning the public charge ground of inadmissibility would be "premature," and if DHS were to issue this type of rule, ICIRR could file a new suit and seek preliminary relief.

ICIRR relies upon *New York v. United States Dep't of Commerce*,[4] where the district court both vacated the relevant agency action and issued an injunction because the defendant "could theoretically reinstate [the vacated] decision by simply re-issuing" it "under a new date or by changing [it] in some immaterial way," and "an injunction [would]" allow "[p]laintiffs to seek immediate recourse" if needed, which was "critical . . . given the looming printing deadline" for

---

[4] 351 F. Supp. 3d 502, 676 (S.D.N.Y.) *aff'd in part, rev'd in part and remanded sub nom. Dep't of Commerce v. New York*, 139 S. Ct. 2551, 204 L. Ed. 2d 978 (2019), *and appeal dismissed*, No. 19-212, 2019 WL 7668098 (2d Cir. Aug. 7, 2019).

the census questionnaire. *Id.* at 676. This reasoning is both unpersuasive and inapplicable here. As explained above, the abstract possibility that an agency *may* take some action analogous to a vacated policy is not sufficient to justify injunctive relief; if it were, then *every* vacatur would be accompanied by an injunction. Additionally, if DHS issues a new rule analogous to the Final Rule, ICIRR could bring a new suit and seek emergency relief, as *Monsanto* instructs. And here, unlike in *New York*, there is no "looming deadline" that would require DHS to institute a new public charge rule on an accelerated timetable that could preclude immediate recourse in a separate lawsuit. And even if the Court finds *New York* persuasive, the plaintiffs there sought an injunction under their *APA claims*. It is unclear why ICIRR cannot similarly seek an injunction through its APA claims, instead of relying upon the equal protection claim. Accordingly, ICIRR cannot justify its pursuit of the equal protection claim based on its new request for injunctive relief against a hypothetical, future DHS policy that may resemble the Final Rule.[5]

Finally, ICIRR argues that it prefers to continue litigating the equal protection claim because Defendants may seek a stay of any permanent injunction entered pursuant to the APA claims. *See* ECF No. 218, at 7-8. This argument fails as well. First, ICIRR's argument—that the Court should decide a Constitutional question now because it *may* eventually serve a purpose *if* Defendants secure a stay of an order entered on statutory grounds—turns the principal of Constitutional avoidance on its head. Courts should decide Constitutional questions only when it is necessary, not when it may potentially prove useful down the line. *See supra* at 3; *All. for Water*

---

[5] ICIRR relatedly argues that it may seek injunctive relief to "combat the lingering effects" of the alleged equal protection violation. ECF No. 218, at 6. But ICIRR identifies no other "lingering effects" that vacatur of the Final Rule could not address, other than the abstract possibility that DHS may issue a new rule resembling the Final Rule—which, again, is insufficient to justify ICIRR's request for injunctive relief. ICIRR also argues that it "plans to seek a declaratory judgment that the Final Rule was motivated by racial animus." ECF No. 218, at 4. But it is unclear what *injury* this declaration may remedy that a vacatur of the Final Rule could not.

*Efficiency v. Fryer*, 808 F.3d 1153, 1157 (7th Cir. 2015) ("courts should not decide constitutional issues unnecessarily"). Second, ICIRR's predicament—that the Court may suspend litigation on the equal protection claim based on a vacatur that is ultimately stayed—is a consequence of Plaintiffs' own strategic decisions. Plaintiffs could have waited until the expedited discovery process was complete, and moved for summary judgment on their equal protection claim first (or on all claims together). Instead, likely due to the Seventh Circuit's decision affirming the Court's preliminary injunction order, Plaintiffs promptly moved for summary judgment on the APA claims to secure quicker relief. In light of Plaintiffs' MSJ, it is now unnecessary for the Court to resolve (and thus for the parties to continue litigating) the equal protection claim.

Finally, with respect to the issue of final judgment, Defendants' position is that if the Court grants Plaintiffs' MSJ, the Court may enter final judgment since the Court need not and should not resolve the equal protection claim.

<u>C</u><small>ONCLUSION</small>

ICIRR cannot have it both ways. It cannot promptly seek a final judgment on APA claims that give it all the relief it has standing to seek, yet simultaneously insist upon the right to continue litigating its equal protection claim in pursuit of what would be—if plaintiffs' APA claims are valid—a purely advisory opinion on a sensitive question of constitutional law. The Court should stay all further proceedings on the equal protection claim, and if the Court grants the MSJ and issues Plaintiffs' requested relief, the Court should abstain from resolving the equal protection claim altogether and issue final judgment.

Dated: October 27, 2020                    Respectfully submitted,


                                           JEFFREY BOSSERT CLARK
                                           Acting Assistant Attorney General

                                           ALEXANDER K. HAAS
                                           Director, Federal Programs Branch

                                           /s/ Kuntal Cholera
                                           KUNTAL V. CHOLERA
                                           JOSHUA M. KOLSKY (DC Bar No. 993430)
                                           KERI L. BERMAN
                                           JASON C. LYNCH
                                           Trial Attorneys
                                           U.S. Dept. of Justice, Civil Division,
                                           Federal Programs Branch
                                           1100 L Street, N.W.
                                           Washington, DC 20001
                                           Phone: (202) 305-8645
                                           Fax: (202) 616-8470
                                           Email: kuntal.cholera@usdoj.gov

                                           *Counsel for Defendants*