**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| COOK COUNTY, ILLINOIS et al,<br><br>*Plaintiffs,*<br><br>v.<br><br>WOLF et al.,<br><br>*Defendants.* | No. 1:19-cv-06334 |

**MEMORANDUM IN SUPPORT OF**
**OPPOSED MOTION TO INTERVENE**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ........................................................................................................... 3

I. The Court Should Grant The State Intervenors' Intervention Under Federal Rule Of Civil Procedure 24(a)(2). ........................................................................................ 3

A. This Motion Is Timely Filed. ............................................................................... 4

B. The State Intervenors Have Important Interests That Relate To The Subject Of This Action. 6

C. Disposition Of This Action Will Impair The State Intervenors' Interests. ..................... 7

D. No Party Adequately Represents The State Intervenors' Interests. ............................... 8

II. Alternatively, The Court Should Permit The State Intervenors To Intervene Under Federal Rule Of Civil Procedure 24(b)(1)(B). ........................................................... 8

CONCLUSION ........................................................................................................ 9

Certificate of Conference ......................................................................................... 11

Certificate of Service ............................................................................................... 11

## INTRODUCTION

This immigration case concerns the hotly contested Public Charge Rule (the "Rule"). Under the Immigration and Nationality Act, "[a]ny alien who . . . in the opinion of the Attorney General at the time of application for admission or adjustment of status, is likely at any time to become a public charge is inadmissible." 8 U.S.C. § 1182(a)(4)(A). In 2019, following extensive notice and comment proceedings under the APA, the Department of Homeland Security issued the Rule, adopting a new definition of "public charge" for purposes of this statute. *See CASA de Md., Inc. v. Trump*, 971 F.3d 220, 234 (4th Cir. 2020), *reh'g en banc granted*, 981 F.3d 311 (4th Cir. 2020) (dismissed March 11, 2021). The Rule defines "public charge" as "'an alien who receives one or more public benefits . . . for more than 12 months in the aggregate within any 36-month period.'" *Id.* at 234 (quoting Inadmissibility on Public Charge Grounds, 84 Fed. Reg. 41,292 (Aug. 14, 2019)). The Rule further explains that "public benefits" include non-cash benefits that are funded in part by the States, including certain Medicaid benefits. *Id.*

This case is one of several related challenges to the Rule. Plaintiffs are a County and the Illinois Coalition for Immigrant Refugee Rights, a non-profit advocacy organization. They brought this action challenging the Rule under the APA initially seeking a preliminary injunction. *Cook County v. McAleenan*, 417 F. Supp. 3d 1008, 1013–14 (N.D. Ill. 2019). This Court issued a preliminary injunction in 2019 to block enforcement of the Rule in Illinois. *Id.* at 1030. The United States immediately appealed and moved to stay the preliminary injunction; the Supreme Court ultimately granted such a stay. *Wolf v. Cook County*, 140 S. Ct. 681 (2020). The Seventh Circuit affirmed the preliminary injunction, and the United States filed a petition for a writ of certiorari. *Cook County*, 962 F.3d at 234; *Mayorkas v. Cook County*, No. 20-450 (U.S. Oct. 7, 2020). That petition remained pending—and the Supreme Court's stay remained in effect—while the Supreme Court granted certiorari in another case concerning the validity of DHS's Rule. *See Dep't of Homeland Sec. v. New York*, 141 S. Ct. 1370 (2021).

Meanwhile, litigation before this Court continued. Plaintiffs moved for partial summary judgment on their APA claims. Mem. Op. & Order, *Cook County v. Wolf*, No. 1:19-CV-06334

(N.D. Ill. Nov. 2, 2020) ECF 222. This Court granted the motion, vacated the Rule, and entered a partial final judgment under Rule 54(b). *Id.* at 14; Partial Final Judgment, *Cook County v. Wolf*, No. 1:19-CV-06334 (N.D. Ill. Nov. 2, 2020) ECF 223. Unlike the preliminary injunction, the vacatur was explicitly "not limited to the State of Illinois." *Id*. at 8. In other words, this Court's ruling applies nationwide. The United States appealed that ruling to the Seventh Circuit and litigated that appeal for over three months. The Seventh Circuit stayed this Court's partial final judgment pending disposition of the appeal, which was itself stayed pending the Supreme Court's disposition of *Department of Homeland Security v. New York*. *See Cook County v. Wolf*, No. 20-3150 (7th Cir. Nov. 19, 2020) ECF No. 21.

Following the change in Administration, the United States abandoned its defense of the Rule. On March 9, 2021, the United States filed nearly simultaneous motions to dismiss all cases challenging the Rule, including this case. The Seventh Circuit granted that motion. Order, *Cook County v. Wolf*, No. 20-3150, 2021 WL 1608766 (7th Cir. Mar. 9, 2021). It also issued its mandate immediately and without allowing any potentially interested parties to seek leave to intervene and defend the Rule. Notice of Issuance of Mandate at 2, *Cook County v. Wolf*, No. 20-3150 (7th Cir. Mar. 9, 2021) ECF No. 24-2. This action left in place this Court's partial grant of summary judgment—which had previously been stayed—allowing the United States to remove the Rule from the Federal Register while bypassing the notice and comment requirements of the APA. *See* Inadmissibility on Public Charge Grounds, 86 Fed. Reg. 14,221 (Mar. 15, 2021).

As a result of the United States decision to abandon its defense of the Rule in the Courts of Appeals and the Supreme Court, the Rule has become unenforceable in any State—including the States of Texas, Alabama, Arizona, Arkansas, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Montana, Ohio, Oklahoma, South Carolina, and West Virginia (collectively, the "State Intervenors").

The State Intervenors moved nearly immediately to vindicate their interests in the Rule. Only two days after the stipulated dismissal—promptly after learning of the United States' decision to abandon its defense of the Rule—the State Intervenors filed three related motions in

the Seventh Circuit. First, the State Intervenors moved the Seventh Circuit to recall its mandate. Second, the State Intervenors asked the Seventh Circuit to reconsider or rehear the order granting the stipulated motion to dismiss. Third, the State Intervenors requested that the Seventh Circuit allow them to intervene in order to defend the Rule, since the United States had abandoned its defense. The Seventh Circuit denied these motions on March 15. Order, *Cook County v. Wolf*, No. 20-3150 (7th Cir. Mar. 15, 2021) ECF No. 26.

On March 19—only four days later—the State Intervenors sought review of that decision in the Supreme Court. *Texas v. Cook County*, No. 20A150 (U.S. Mar. 19, 2021). While the Supreme Court denied the State Intervenors' application for a stay pending the filing and disposition of a petition for a writ of certiorari, the Court did so "without prejudice to the States raising these and other arguments before the District Court, whether in a motion for intervention or otherwise." *Texas v. Cook County*, No. 20A150 (U.S Apr. 26, 2021). And the Court made clear that "[a]fter the District Court considers any such motion, the States may seek review, if necessary, in the Court of Appeals, and in a renewed application before this Court." *Id.*

Because the United States will no longer defend a rule directly implicating the State Intervenors' interests, they file this Opposed Motion to Intervene to defend the Rule. As the State Intervenors' interests are wholly unrepresented in this case, mandatory intervention under Federal Rule of Civil Procedure 24(a)(2) is appropriate. At a minimum, the State Intervenors should be permitted to intervene under Federal Rule of Civil Procedure 24(b)(1)(B).

## ARGUMENT

### I. The Court Should Grant The State Intervenors' Intervention Under Federal Rule Of Civil Procedure 24(a)(2).

To intervene as of right under Rule 24(a), an intervenor must show: "(1) [a] timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action." *Illinois v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019). The State Intervenors easily meet that standard.

### A. This Motion Is Timely Filed.

The Seventh Circuit instructs courts to look to four factors to determine whether a motion to intervene is timely: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *Id.* Moreover, "when intervention of right is sought, because 'the would-be intervenor may be seriously harmed if intervention is denied, courts should be reluctant to dismiss such a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive.'" *Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 924 F.3d 375, 388–89 (7th Cir. 2019) (quoting 7C Charles Alan Wright et al., *Federal Practice & Procedure: Civil* § 1916 (3d ed. 2018)). These factors show that the State Intervenor's motion to intervene is timely, as demonstrated by the Seventh Circuit's decision in *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009).

In *Flying J*, Flying J sued the Wisconsin Attorney General to challenge constitutionality of a Wisconsin statute. *Id.* at 570. The district court concluded that the statute was unconstitutional and entered final judgment, "whereupon the state threw in the towel and decided not to appeal." *Id.* Shortly after the Wisconsin Attorney General announced its decision not to appeal, a trade association moved to intervene in the case to defend the statute. *Id.* at 570–71. The Seventh Circuit held that the association was entitled to intervene as of right. As relevant here, the *Flying J* court concluded that the association's motion to intervene—"even though not filed until the district judge had entered his final judgment"—was timely. *Id.* at 572.

> Had the association sought to intervene earlier, its motion would doubtless (and properly) have been denied on the ground that the state's attorney general was defending the statute and that adding another defendant would simply complicate the litigation. For there was nothing to indicate that the attorney general was planning to throw the case—until he did so by failing to appeal. At that point the objection to intervention, as long as taking new evidence was not contemplated, evaporated.

*Id.*

Like *Flying J*, this case clearly presents "unusual circumstances" warranting intervention. *City of Chicago*, 912 F.3d at 984. Although the State Intervenors have been aware of their interests in the Rule for some time, the previous Administration and former federal defendants in this case defended the Rule for years across multiple courts, and the State Intervenors' interests were appropriately represented in this defense. The State Intervenors therefore relied on the United States to defend the Rule in lieu of burdening the courts with additional briefing reiterating that defense. It was not until March 9, when the United States voluntarily moved to dismiss its appeal in this case, that the State Intervenors learned that the new Administration intended to withdraw its defense of the Rule in courts across the country and repeal the Rule by stipulation in litigation. On learning of that decision, the State Intervenors took immediate action to intervene in the pending appellate cases. *E.g.*, Motion to Recall Mandate to Permit Intervention, *Cook County v. Wolf*, No. 20-3150 (U.S. Mar. 11, 2021) ECF No. 25. The Seventh Circuit denied the State Intervenors' attempt to intervene on March 15, 2021. Order, *supra* ECF No. 26. The Supreme Court similarly denied the State Intervenors' attempt to intervene on April 26, 2021, and, instead, instructed the State Intervenors to act in this Court. *Texas v. Cook County*, No. 20A15 (Apr. 26, 2021). The State Intervenors submit this Motion promptly following the Supreme Court's order.

Further, Plaintiffs will not be prejudiced by the State Intervenors' intervention because they "could not have assumed that, if [they] won in the district court, there would be no appeal." *Flying J*, 578 F.3d at 573; *see also id.* at 574 ("It's not as if [the plaintiff] had incurred litigation costs in a reasonable expectation that they would not be magnified by an appeal."). Plaintiffs faced the possibility of protracted litigation until only a few weeks ago; they suffer no prejudice by litigating the same issues in the same forum against the State Intervenors rather than the United States. *See id.* at 573–74.

In contrast, the State Intervenors will suffer great prejudice if they cannot intervene. As discussed in detail below, the State Intervenors provide billions of dollars on Medicaid services and other public benefits to indigent individuals, including individuals who would be inadmissible under the Rule. These costs have steadily increased over the past several years, and the Rule would

have helped to reduce such expenditures by efficiently and effectively implementing Congress's long-established policy of limiting the immigration of individuals who are not self-sufficient. Thus, if the State Intervenors cannot defend the Rule, their Medicaid and other social-welfare expenditures will be higher than they would if the Rule were enforced. This motion is therefore timely. *Cf. id.* at 572 (concluding that a "statute's direct beneficiaries" could intervene as of right because they would be harmed by the invalidation of that statute).

**B. The State Intervenors Have Important Interests That Relate To The Subject Of This Action.**

The State Intervenors also have important interests relating to the subject matter of this action, specifically their interests in conserving their Medicaid and related social-welfare budgets. Providing for the healthcare needs of economically disadvantaged individuals represents a substantial portion of the State Intervenors' budgets. For example, in Texas in 2015, approximately 4 million Texans relied on Medicaid. Tex. Health & Human Servs. Comm'n, Texas Medicaid and CHIP in Perspective 1–2 (11th ed. 2017), https://hhs.texas.gov/reports/2017/02/texas-medicaid-chip-perspective-eleventh-edition. Medicaid is jointly financed by the federal government and the States. *Id.* at 4. In 2018–19, total Texas expenditures for Medicaid represented approximately 22% of its budget. *Medicaid Expenditures as a Percent of Total State Expenditures by Fund*, KFF, https://tinyurl.com/czpjys9v (last visited May 10, 2021). In the past several years, the federal government has paid for slightly less than 60% of Texas's Medicaid expenditures. Texas Medicaid and CHIP in Perspective at 183, *supra*. Although the exact amount of Texas's Medicaid budget spent on immigrants who would otherwise be inadmissible under the Rule has varied, the total budget is always measured in billions of dollars. *Id.* at 179.

Invalidating the Rule will have a disproportionate impact on the State Intervenors, particularly on border states. For example, Texas and Montana have among the largest international borders in the country and provide Medicaid services to many immigrants. The Rule would reduce that burden. Under the relevant statute, "[a]ny alien who . . . in the opinion of the Attorney General at the time of application for admission or adjustment of status, is likely at any

time to become a public charge is inadmissible." 8 U.S.C. § 1182(a)(4)(A). The Rule defines "public charge" as "'an alien who receives one or more public benefits . . . for more than 12 months in the aggregate within any 36-month peri-od.'" 84 Fed. Reg. at 41,501. "Public benefits" specifically includes, among other forms of public assistance, Medicaid services with some exceptions. *Id.* Thus, if the Attorney General determined that an alien applying for admission to the United States would likely require Medicaid services for more than 12 months in a 36-month period, then that alien would be inadmissible. Accordingly, fewer aliens requiring Medicaid and other public services would be admitted to the United States, including into Texas and Montana, thus reducing the State Intervenors' Medicaid budgets. Thus, each State Intervenor has an interest in the subject matter of this action.

**C. Disposition Of This Action Will Impair The State Intervenors' Interests.**

The State Intervenors must also show "that disposing of the action may as a practical matter impair or impede" their interests. FED. R. CIV. P. 24(a)(2). The State Intervenors' interests in conserving their increasing Medicaid and related social-welfare budgets will be impaired by the disposition of this case absent intervention. As explained above, this Court's vacatur order was explicitly "not limited to the State of Illinois." *See* Mem. Op. & Order at 8, *supra* ECF 222. In other words, the Court's ruling applies nationwide. And now that the United States has voluntarily dismissed this appeal, the United States asserts that nationwide vacatur has taken effect, and has removed the Rule from the Federal Register, *see* 86 Fed. Reg. 14,221, based solely on this Court's partial grant of summary judgment. Thus, the United States was able to remove the Rule "in a way that allowed them to dodge the pesky requirements of the APA," *City & County of San Francisco v. United States Citizenship & Immigr. Servs.*, 992 F.3d 742, 749 (9th Cir. 2021) (Vandyke, J., dissenting), including notice and comment rulemaking based on this Court's judgment. Both the underlying vacatur and the Rule's removal from the Federal Register have a direct affect on the State Intervenors budgets—through expenditures related to

Medicaid and other government services provided to aliens otherwise inadmissible but for vacatur of the Rule.

**D. No Party Adequately Represents The State Intervenors' Interests.**

No party now adequately represents the State Intervenors' interests because no party is left to defend the Rule: the plaintiffs in this case and their erstwhile opponent the United States are now firmly aligned, both as a matter of litigation strategy and policy. Absent the State Intervenors' intervention, all states will be affected by the invalidation of the Rule without having the ability to defend those interests. For these reasons, the State Intervenors are entitled to intervene as of right.

## II. Alternatively, The Court Should Permit The State Intervenors To Intervene Under Federal Rule Of Civil Procedure 24(b)(1)(B).

If the Court does not grant the State Intervenors intervention as of right— which it should, for the reasons addressed above—it should nonetheless grant permissive intervention because the State Intervenors' position and this suit have a common question of law or fact. *See* Fed. R. Civ. P. 24(b)(1)(B) ("On timely motion, the court may permit anyone to intervene who . . . (B) has a claim or defense that shares with the main action a common question of law or fact.").

Under Rule 24(b), a movant seeking permissive intervention must show: (1) that there exists an independent ground of subject matter jurisdiction; (2) that the motion is timely; (3) that the movant's claims or defenses share with the main action a common question of law or fact; and (4) that intervention will not result in undue delay or prejudice to the existing parties. Fed. R. Civ. P. 24(b); *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). Again, the State Intervenors easily meet that standard.

Here, the requirements of an independent ground of subject-matter jurisdiction and shared claims or defenses are not strictly applicable, as Plaintiffs must demonstrate subject-matter jurisdiction, and the State Intervenors seek to intervene as defendants by stepping into the shoes of the United States. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

But this Court would retain subject-matter jurisdiction over this federal question, and the State Intervenors intend to present defenses of the Rule similar to those that were, until only a few weeks ago, presented by the federal government—as demonstrated by the proposed pleading attached to this filing. *Cook County*, 962 F.3d at 217. The State Intervenors likewise enjoy an actual controversy against Plaintiffs: they will be tangibly, economically affected by an adverse judgment issued by this Court.

The timeliness and prejudice analyses discussed above apply equally to the State Intervenors' ability to intervene permissively. The State Intervenors took steps to intervene in the pending appeal of this case immediately after they learned on March 9 that the United States would no longer defend the Rule, and they filed this motion promptly after the Supreme Court denied their intervention in the pending appeal on April 26. Plaintiffs will suffer no prejudice by this intervention because, until only a few weeks ago, they expected to continue to litigate this case against the United States. Only the United States' decision to abandon its defense of the Rule relieved them from that obligation.

Failing intervention as of right, this Court should exercise its discretion to permit the State Intervenors to intervene to defend their interests in avoiding increased costs by the invalidation of the Rule that will otherwise go unprotected. The State Intervenors have enormous financial obligations in providing Medicaid and other public services, but they had no need to intervene to defend their interests in the Rule while the United States continued its vigorous defense. But that changed when the United States abandoned its defense of the Rule. This Court should not countenance this abrupt turn.

## CONCLUSION

For the reasons set forth in this Motion, the State Intervenors request this Court grant the State Intervenors' motion to intervene as of right or, alternatively, to intervene permissively, and grant it all the same rights and responsibilities as a party to the lawsuit.

Dated: May 12, 2021

Respectfully submitted.

STEVE MARSHALL
Attorney General of Alabama

MARK BRNOVICH
Attorney General of Arizona

LESLIE RUTLEDGE
Attorney General of Arkansas

TODD ROKITA
Attorney General of Indiana

DEREK SCHMIDT
Attorney General of Kansas

DANIEL CAMERON
Attorney General of Kentucky

JEFF LANDRY
Attorney General of Louisiana

LYNN FITCH
Attorney General of Mississippi

AUSTIN KNUDSEN
Attorney General of Montana

DAVE YOST
Attorney General of Ohio

MIKE HUNTER
Attorney General of Oklahoma

ALAN WILSON
Attorney General of South Carolina

PATRICK MORRISEY
Attorney General of West Virginia

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Judd E. Stone II
Solicitor General

Lanora C. Pettit
Assistant Solicitor General

/s/ Mindy Wetzel
Mindy Wetzel
Assistant Attorney General
Illinois Bar No.: 6314257
Texas Bar No.: 24115673

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for State Intervenors[1]

[1] Pursuant to Local Rule 83.12, Counsel for State Intervenors are excepted from the requirement that they hold membership in the Northern District of Illinois trial bar.

## Certificate of Conference

On May 10 and 11, 2021, counsel for the State of Texas conferred with counsel for Plaintiffs and for the United States, who advised that they are opposed to this motion.

/s/ Mindy Wetzel
Mindy Wetzel

## Certificate of Service

On May 12, 2021, this motion was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court.

/s/ Mindy Wetzel
Mindy Wetzel